UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

MARICHU DE SESTO,                                    Case Number:

                Plaintiff,                          15-cv-01118 (AJN)

      -v-                                         **ELYSE SLAINE'S ANSWER,
                                        AFFIRMATIVE DEFENSES
                                        AND COUNTERCLAIMS TO**

ELYSE SLAINE and DAVID SLAINE,                 **COMPLAINT**

                Defendants.

--------------------------------------------------------------------X

        Defendant Elyse Slaine ("Defendant" or "Ms. Slaine"), for her Answer, Affirmative

Defenses, and Counterclaims to the Complaint (the "Complaint"), states and alleges as follows:

**RESPONSE TO PRELIMINARY STATEMENT**

        1.      Defendant denies the allegations contained in paragraph 1 of the Complaint,

except admits that Marichu De Sesto ("Plaintiff" or "Ms. De Sesto") began working for

Defendant in or around July 2000.

        2.      Defendant denies the allegations contained in paragraph 2 of the Complaint.

        3.      Defendant denies the allegations contained in paragraph 3 of the Complaint.

        4.      The statements set forth in paragraph 4 of the Complaint are not statements of fact

and as such do not require that Defendant admits or denies such statements.  To the extent that

paragraph 4 of the Complaint requires a response, Defendant denies the allegations set forth in

paragraph 4 of the Complaint.

**RESPONSE TO JURISDICTION AND VENUE**

        5.      Defendant neither admits nor denies the allegations contained in paragraph 5 of

the Complaint in that paragraph 5 calls for a legal conclusion.

6.       Defendant neither admits nor denies the allegations contained in paragraph 6 of the Complaint in that paragraph 6 calls for a legal conclusion.

7.       Defendant neither admits nor denies the allegations contained in paragraph 7 of the Complaint in that paragraph 7 calls for a legal conclusion.

8.       Defendant neither admits nor denies the allegations contained in paragraph 8 of the Complaint in that paragraph 8 calls for a legal conclusion.

## RESPONSE TO PARTIES

9.       Defendant denies the allegations contained in paragraph 9 of the Complaint, except admits that Plaintiff began working for Defendant in or around July 2000.

10.      Defendant denies the allegations contained in paragraph 10 of the Complaint, except admits that she resides at 925 Park Ave., New York, NY and owns a property at 37 Jule Pond Drive, Southampton, NY.

11.      To the extent that paragraph 11 calls for a legal conclusion, Defendant is not required to respond.  Defendant denies the remaining allegations contained in paragraph 11 of the Complaint.

12.      Defendant admits the allegations contained in paragraph 12 of the Complaint.

13.      Defendant denies the allegations contained in paragraph 13 of the Complaint.

## RESPONSE TO STATEMENT OF FACTS

14.      Defendant denies the allegations contained in paragraph 14 of the Complaint, except admits that Plaintiff began working for Defendant in or around July 2000.

15.      Defendant denies the allegations contained in paragraph 15 of the Complaint.

16.      Defendant denies the allegations contained in paragraph 16 of the Complaint.

17.      Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.     Defendant denies the allegations contained in paragraph 18 of the Complaint.

19.     Defendant denies the allegations contained in paragraph 19 of the Complaint.

20.     Defendant denies the allegations contained in paragraph 20 of the Complaint.

21.     Defendant denies the allegations contained in paragraph 21 of the Complaint, except admits that throughout Plaintiff's employment, but not on all on a daily basis, Plaintiff purchased groceries for Defendant using Defendant's credit card, did light laundry, light housekeeping, cooked dinner for Defendant on a rare occasion, and fed Defendant's dogs once or twice a day on the days that Plaintiff worked by herself.

22.     Defendant denies the allegations contained in paragraph 22 of the Complaint, except admits that Plaintiff was required to sleep overnight at Defendant's home when Plaintiff worked a day and was scheduled to work for Defendant the next day.

23.     Defendant denies the allegations contained in paragraph 23 of the Complaint.

24.     Defendant denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, except Defendant states that Plaintiff regularly received mail and packages addressed to Plaintiff delivered to Defendant's residence and filled a large dresser and a large closet with personal belongings in Defendant's New York residence during the relevant time period.

25.     Defendant denies the allegations contained in paragraph 25 of the Complaint.

26.     Defendant denies the allegations contained in paragraph 26 of the Complaint.

27.     Defendant denies the allegations contained in paragraph 27 of the Complaint.

28.     Defendant denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint, except Defendant states that regardless of Plaintiff's intent, Plaintiff did reside at Defendant's home.

29.    To the extent that paragraph 29 calls for a legal conclusion, Defendant is not required to respond.  Defendant denies the remaining allegations contained in paragraph 29 of the Complaint.

30.    Defendant denies the allegations contained in paragraph 30 of the Complaint.

31.    To the extent that paragraph 31 calls for a legal conclusion, Defendant is not required to respond.

32.    To the extent that paragraph 32 calls for a legal conclusion, Defendant is not required to respond.

33.    Defendant denies the allegations contained in paragraph 33 of the Complaint.

34.    To the extent that paragraph 34 calls for a legal conclusion, Defendant is not required to respond.

35.    Defendant denies the allegations contained in paragraph 35 of the Complaint, except Defendant states that Defendant would pay Plaintiff on dates and times determined by Plaintiff and that Plaintiff refused to accept payment on a regular basis.

36.    Defendant denies the allegations contained in paragraph 36 of the Complaint.

37.    Defendant denies the allegations contained in paragraph 37 of the Complaint.

## RESPONSE TO COUNT 1

38.    Defendant repeats and realleges the above paragraphs as if fully set forth herein.

39.    To the extent that paragraph 39 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 39 of the Complaint.

40.    To the extent that paragraph 40 calls for a legal conclusion, Defendant is not required to respond.

41.    To the extent that paragraph 41 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 41 of the Complaint.

42.    Defendant denies the allegations contained in paragraph 42 of the Complaint.

43.    Defendant denies the allegations contained in paragraph 43 of the Complaint.

44.    Defendant denies the allegations contained in paragraph 44 of the Complaint.

## RESPONSE TO COUNT 2

45.    Defendant repeats and realleges the above paragraphs as if fully set forth herein.

46.    To the extent that paragraph 46 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 46 of the Complaint.

47.    To the extent that paragraph 47 calls for a legal conclusion, Defendant is not required to respond.

48.    To the extent that paragraph 48 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 48 of the Complaint.

49.    Defendant denies the allegations contained in paragraph 49 of the Complaint.

50.    Defendant denies the allegations contained in paragraph 50 of the Complaint.

51.    Defendant denies the allegations contained in paragraph 51 of the Complaint.

## RESPONSE TO COUNT 3

52.    Defendant repeats and realleges the above paragraphs as if fully set forth herein.

53.     To the extent that paragraph 53 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 53 of the Complaint.

54.     To the extent that paragraph 54 calls for a legal conclusion, Defendant is not required to respond.

55.     Defendant denies the allegations contained in paragraph 55 of the Complaint.

56.     Defendant denies the allegations contained in paragraph 56 of the Complaint.

57.     Defendant denies the allegations contained in paragraph 57 of the Complaint.

**RESPONSE TO COUNT 4**

58.     Defendant repeats and realleges the above paragraphs as if fully set forth herein.

59.     To the extent that paragraph 59 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 59 of the Complaint.

60.     To the extent that paragraph 60 calls for a legal conclusion, Defendant is not required to respond.

61.     Defendant denies the allegations contained in paragraph 61 of the Complaint.

62.     Defendant denies the allegations contained in paragraph 62 of the Complaint.

63.     Defendant denies the allegations contained in paragraph 63 of the Complaint.

**RESPONSE TO COUNT 5**

64.     Defendant repeats and realleges the above paragraphs as if fully set forth herein.

65.     Defendant denies the allegations contained in paragraph 65 of the Complaint.

66.     Defendant denies the allegations contained in paragraph 66 of the Complaint.

67.     Defendant denies the allegations contained in paragraph 67 of the Complaint.

68.    Defendant denies the allegations contained in paragraph 68 of the Complaint.

69.    Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.    Defendant denies the allegations contained in paragraph 70 of the Complaint.

71.    Defendant denies the allegations contained in paragraph 71 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

72.    Defendant asserts the following affirmative defenses without assuming any burden of production or proof that she would not otherwise have.

## FIRST AFFIRMATIVE DEFENSE

73.    The Complaint fails to state a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

74.    Any damages purportedly suffered by Plaintiff are a result of her own action or inaction and/or negligence, or the negligence of third parties beyond Defendant's control.

## THIRD AFFIRMATIVE DEFENSE

75.    Plaintiff's claims are barred by the equitable doctrines of waiver, latches, estoppel and unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

76.    At all relevant times during her employment with Defendant, Plaintiff was a live-in domestic worker and therefore was at all relevant times exempt from overtime requirements of the Fair Labor Standards Act.

## FIFTH AFFIRMATIVE DEFENSE

77.    At all relevant times during her employment with Defendant, Plaintiff was a live-in domestic worker and therefore was exempt from the New York Labor Law until, at the earliest, November 29, 2010.

## SIXTH AFFIRMATIVE DEFENSE

78.      At all relevant times during her employment with Defendant, Plaintiff was a live-in domestic worker and therefore, to the extent that the New York Domestic Workers' Bill of Rights was in effect, Plaintiff was not entitled to overtime payment because she never worked 44 hours or more in any given week.

## SEVENTH AFFIRMATIVE DEFENSE

79.      Plaintiff's claims are barred in whole or in part by the applicable statute of limitations pursuant to 29 U.S.C §§ 255-256 and/or New York Labor Law.

## EIGHTH AFFIRMATIVE DEFENSE

80.      Defendant at all times, and in all manners, acted in accordance with any and all duties and obligations she may have had under the FLSA and/or New York Labor Law.

## NINTH AFFIRMATIVE DEFENSE

81.      Plaintiff cannot establish that any acts or omissions were willful under the FLSA or the New York Labor Law.

## TENTH AFFIRMATIVE DEFENSE

82.      Any recovery by Plaintiff should be limited to the extent Plaintiff has failed to mitigate any of the damages alleged in the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

83.      Plaintiff's claims are barred due to the live-in domestic service employee exemption or other statutory exemptions to the FLSA and/or New York state law.

## TWELFTH AFFIRMATIVE DEFENSE

84.      Plaintiff's claims are barred in whole or in part as Plaintiff earned more than minimum wage for every hour that she worked.

## THIRTEENTH AFIRMATIVE DEFENSE

85.    Plaintiff's claims are barred in whole or in part based upon the "fluctuating work week" doctrine and method of pay calculation.

## FOURTEENTH AFFIRMATIVE DEFENSE

86.    This court lacks subject matter jurisdiction over some or all of the claims asserted by Plaintiff.

## FIFTEENTH AFFIRMATIVE DEFENSE

87.    Plaintiff is not entitled to some or all of the relief sought under the doctrine of consent.

## SIXTEENTH AFFIRMATIVE DEFENSE

88.    Defendant states, in the alternative, if necessary, that any actions taken with respect to Plaintiff were taken in good faith in conformity with and in reliance on a written administrative regulation, order, ruling, approval, interpretation, and/or administrative practice or policy, and/or with reasonable grounds to believe such conduct complied with the FLSA and/or New York Labor Law or interpretations of those statutes.

## SEVENTEENTH AFFIRMATIVE DEFENSE

89.    To the extent that Plaintiff and Defendant entered into an agreement, Plaintiff's claims are barred as she was the first breaching party.

## EIGHTEENTH AFFIRMATIVE DEFENSE

90.    To the extent that Plaintiff entered into an agreement with Defendant, Plaintiff's claims are barred due to Plaintiff's fraud in the inducement.

## NINETEENTH AFFIRMATIVE DEFENSE

91.    Plaintiff's claims are barred due to the doctrine of accord and/or satisfaction.

## TWENTIETH AFFIRMATIVE DEFENSE

92.     Plaintiff's claims are barred due to her own intentional misrepresentations.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

93.     Plaintiff's claims are barred by the doctrine of avoidable consequences.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

94.     Plaintiff's claims are barred to the extent that she has waived the right of recovery.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

95.     Defendant is entitled to any and all offsets and/or set offs permissible by law.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

96.     Plaintiff's claims are barred due to the statute of frauds.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

97.     Plaintiff's claims are barred due to mutual release.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

98.     Plaintiff's claims are barred due to the *de minimis* rule.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

99.     Plaintiff's claims are barred due to *res judicia* and/or collateral estoppel.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

100.    Plaintiff's claims are barred because Plaintiff was compensated for every hour worked.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

101.    Plaintiff's claims are barred because the parties had a clear mutual understanding that the amounts paid to Plaintiff were for all hours worked.

## THIRTIETH AFFIRMATIVE DEFENSE

102.   Plaintiff's claims are barred because Plaintiff represented the hours worked, expenses incurred and amounts purportedly owed to Plaintiff by Ms. Slaine.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

103.   Plaintiff's claims are barred because Plaintiff was required to record the hours worked and submit to Defendant pursuant to prevailing law, including, but not limited to, 29 C.F.R. § 552.110(d).

## THIRTY-SECOND AFFIRMATIVE DEFENSE

104.   Plaintiff's claims are barred by the doctrine of abandonment.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

105.   Plaintiff's claims are barred by the doctrine of *In Pari Delicto*.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

106.   Because Plaintiff's Complaint is phrased in conclusory terms, Defendant cannot fully anticipate all defenses which may be applicable to this action.  Accordingly, the right to assert additional defenses, to the extent such defenses are applicable, is hereby reserved.

## DEFENDANT'S COUNTERCLAIM

## NATURE OF COUNTERCLAIM

107.   Ms. Slaine's counterclaims arise from Ms. De Sesto's betrayal of Plaintiff's trust and confidences by intentionally misstating her own hours worked and expenses incurred to fraudulently induce Ms. Slaine to pay Ms. De Sesto over $275,000 between February 2009 and May 2014 when Ms. De Sesto was actually entitled to wages and expense reimbursements of no more than $225,000.

108.    By making affirmative misrepresentations to Ms. Slaine, Ms. De Sesto induced Ms. Slaine to overpay Ms. De Sesto in excess of $50,000 over this period.

109.    Despite being overpaid, after Ms. De Sesto quit her employment, Ms. De Sesto then employed extreme and outrageous conduct, including attempting to smear Ms. Slaine's name and reputation with malicious intent and for the purpose of trying to compel Ms. Slaine to pay even more money to Ms. De Sesto to which Ms. De Sesto was neither owed nor entitled.

110.    Ms. De Sesto knowingly engaged in a campaign of harassment including but not limited to organizing protests, including a marching band for hire and extreme special interests professional protest groups with the intent to cause, or reckless disregard of the likelihood that such conduct would cause, extreme emotional distress to Ms. Slaine.

### PARTIES

111.    Ms. Slaine is a natural person residing at 925 Park Ave., New York, NY.

112.    Ms. De Sesto is a natural person residing at an unknown location.

### JURISDICTION AND VENUE

113.    This Court has jurisdiction to adjudicate the relief sought herein pursuant to Fed. R. Civ. P. 13(a).

114.    Venue is appropriate in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

### FACTS

115.    Ms. De Sesto began working for Mr. and Ms. Slaine in or around July 2000.

116.     While Ms. De Sesto worked for Defendant off and on between July 2000 and May 2014, during the time period that Ms. De Sesto worked for Ms. Slaine, Ms. De Sesto worked as a live-in domestic service employee.

117.     In or around October 2008, Mr. and Ms. Slaine separated and Mr. Slaine moved out of the 925 Park Avenue residence.

118.     In November 2008, Ms. De Sesto requested to be paid in longer time intervals, rather than on a bi-weekly basis. Going forward, Ms. De Sesto would record when she worked and would submit the amounts that she was owed by Ms. Slaine on pay days chosen by Ms. De Sesto.

119.     Ms. De Sesto represented at that time that she needed this arrangement to "help her save money," that she claimed she would otherwise spend.

120.     In connection with this request, Ms. De Sesto committed to keeping track of when she worked, expenses that she incurred and the amounts that Ms. Slaine owed to Ms. De Sesto for the relevant work period.

121.     Ms. De Sesto made this request to Ms. Slaine while they were both in the office of Ms. Slaine's 925 Park Avenue residence.

122.     Ms. Slaine consented to this arrangement out of a sense of loyalty to Ms. De Sesto and placed her trust in Ms. De Sesto to act in good faith.

123.     For each pay period, Ms. De Sesto would present Ms. Slaine with how much she claimed to be owed for work and expenses for which Ms. De Sesto claimed to be owed.

124.     However, upon information and belief, Ms. De Sesto requested this arrangement so that she could more easily obscure when she actually worked and claim that she worked more

than she did in support of a scheme to defraud Ms. Slaine and to be paid in excess of what she was actually owed.

125.    Throughout the period that Ms. De Sesto worked for Ms. Slaine, Ms. De Sesto intentionally requested payment from Ms. Slaine either for periods that Ms. De Sesto did not work or expenses that Ms. De Sesto did not incur, or requested payment twice for the same work period that Ms. De Sesto did work or expenses that she did incur.

126.    **Schedule A** attached hereto is a chart reflecting payments made to Ms. De Sesto by Ms. Slaine including the date of the check, the amount of the check, the check number, and the amount of the overpayment made due to Ms. De Sesto's intentional misrepresentations.

127.    With rare exceptions, Ms. De Sesto made the requests for payment on the same date as the date of the checks identified on **Schedule A**.

128.    These requests for payment set forth on **Schedule A** were made by Ms. De Sesto at Ms. Slaine's 925 Park Ave. residence and were often requested at night when Ms. Slaine was in bed.

129.    Ms. Slaine accepted the time Ms. De Sesto claimed she worked, expenses and amounts that Ms. De Sesto claimed due to the parties' long relationship and in reliance on Ms. De Sesto's presumed honesty and loyalty to Ms. Slaine.

130.    Ms. De Sesto knowingly and intentionally claimed work periods, expenses and amounts that were inaccurate and overstated such amounts allegedly owed to Ms. De Sesto by Ms. Slaine when submitting for payment.

131.    On May 16, 2014 Ms. De Sesto quit her employment.  At no time prior to Ms. De Sesto quitting her employment did Ms. De Sesto indicate in any way that she believed that she had been underpaid or not paid properly.

132.   Without giving Ms. Slaine any notice of her alleged belief that she was not paid overtime, upon information and belief, Ms. De Sesto organized through social media, including Facebook, an aggressive "protest" stationed outside of Ms. Slaine's Manhattan residence on October 29, 2014.

133.   This protest was advertised on Facebook on October 21, 2014.

134.   In connection with the aforementioned protest, upon information and belief, at Ms. De Sesto's direction, fliers were prepared and distributed featuring, *inter alia*, a large photograph of Ms. Slaine with words in large print stating "Elyse Slaine: **WAGE THIEF!**"

135.   Fliers were distributed, upon information and belief, at Ms. De Sesto direction which also stated "We are marching today in support of Filipina domestic work Marichu De Sesto, whose wages have been stolen from her by millionaire socialite Elyse Slaine."

136.   The fliers went on to state "Marichu is leading today's march to the home of her former Park Avenue employers.  There we will deliver a demand letter for her unpaid and overtime wages.  Marichu will speak out about her years of long hours, unpaid overtime and abrupt termination after requesting time off for medical reasons."

137.   At all times Ms. De Sesto knew the above outrageous and inflammatory statements on the distributed fliers to be demonstrably false.

138.   In addition, while Ms. De Sesto is well aware of the fact that Ms. Slaine is Jewish, and that she is the daughter of a Holocaust survivor, Ms. De Sesto, upon information and belief, intentionally and knowingly enlisted the assistance and appearance of individuals and organizations at the "protests" and public smear campaign against Ms. Slaine, which individuals and organizations have a strong and well-known history of publicly espousing anti-Semitic and anti-Zionist views and opinions.

139.    Ms. De Sesto maliciously enlisted these organizations in order to cause Ms. Slaine emotional distress and harm her well-being in order to intimidate, harass, and cause Ms. Slaine extreme embarrassment, trauma, and severe emotional distress.

140.    Specifically, upon information and belief, Ms. De Sesto arranged for Ben Becker to sign a threatening letter sent to Ms. Slaine's home on behalf of an organization known as Justice First.  Mr. Becker also personally appeared several times at the doorsteps of Ms. Slaine's apartment building to hand out libelous fliers about Ms. Slaine.

141.    Upon information and belief, Mr. Becker is the regional organizer for the A.N.S.W.E.R. Coalition, founding member of the PSL (Party for Socialism and Liberation), co-founder of Justice First, and was the organizer/speaker at numerous anti-Zionist rallies, including an anti-Zionist rally in Times Square last year in which signs with swastikas were prominently displayed, and at which Israel was compared to the Nazi regime.

142.    According to the Anti-Defamation League: "Under the guise of an antiwar and antiracist agenda, A.N.S.W.E.R. regularly promotes and organizes anti-Israel demonstrations and works hand-in-hand with many of the major anti-Israel groups in the United States. Representatives of A.N.S.W.E.R. openly express extreme views, including blatant support for terrorist groups like Hamas and Hezbollah that target Israeli civilians and support the destruction of the state of Israel."[1]

143.    Upon information and belief, Ms. De Sesto enlisted members of the extremist, anti-Semitic, anti-Zionist Al-Awda group to personally participate in the rally in front of Ms. Slaine's building. Among them was Ms. Lamis Deek, board member of a Council on American-Islamic Relations ("CAIR") affiliated group, CAIR-NY, which, upon information and belief, was

---

[1]    http://archive.adl.org/main_anti_israel/iac_answer_backgrounder.html#.VTfeMiFViko, accessed April 22, 2015.

recently declared a terrorist organization by the UAE, and co-founder of Al-Awda NY.  Upon information and belief, during Al-Awda's annual convention in New York City in April 2004, Ms. Deek called Israeli soldiers "Zionist henchmen" and "Nazis," and stated that Al-Awda embodied the "ultimate rejection of Zionism."[2]   She also said that "the Zionist-Israeli government has no right to exist" and called for "the full dismantlement of all Zionist structures."[3]

144.    Moreover, upon information and belief, Ms. De Sesto enlisted the assistance of Leah Obias, a Damayan coordinator, to lead the coercive protest in front of Ms. Slaine's home.

145.    The protests and statements made during the protests were meant to shake down Ms. Slaine and force Ms. Slaine to pay money to Ms. De Sesto to which Ms. De Sesto knows she is not entitled.

146.    For example, upon information and belief, at Ms. De Sesto's request, Leah Obias of the "Damayan" organization publicly threatened during the protests that "[w]e'll be back here every day until [Ms. Slaine] pays. We're gonna continue a long term campaign, a publicity campaign, until Elyse Slaine, wage thief pays Marichu her wages."

147.    Ms. Slaine was damaged when these anti-Semitic, anti-Zionist and Holocaust-trivializing groups held up libelous banners with images of Ms. Slaine, while Ms. Obias, upon information and belief, at Ms. De Sesto's direction, screamed Ms. Slaine's name into a bullhorn, and demanded that she come down and face the "angry mob" as the "Rude Mechanical Orchestra," a marching band for hire, played loud, disturbing music.  This disturbance outside of Ms. Slaine's residence was, upon information and belief, intended to terrorize, harass, intimidate, and publicly humiliate Ms. Slaine.

---

[2]    http://archive.adl.org/israel/anti_israel/al_awda/chronology.html#.VTfhaSFViko, accessed April 22, 2015.
[3]    https://www.youtube.com/watch?v=4ax62cyhrEI;
https://www.youtube.com/watch?v=1D66JSmgiUI, accessed April 22, 2015.

148.    Demonstrations continued outside of Ms. Slaine's Manhattan residence on a daily basis which consisted of chants, and mass distribution of fliers in front of Ms. Slaine's building and throughout her neighborhood.   Moreover, threatening posts were made on social media, which posts included Ms. Slaine's home address encouraging mobs of people to show up in front of Ms. Slaine's home until Ms. Slaine "pays up."

149.    By these tactics, Ms. De Sesto sought to cause Ms. Slaine extreme emotional distress, or acted in reckless disregard of same.

150.    Ms. Slaine suffered extreme emotional distress from the strain of the constant protests outside of her home, the knowingly false statements disseminated by fliers distributed outside of her home and in her neighborhood and social media as well as the participation of known anti-Zionist and anti-Semitic individuals and organizations.

151.    Ms. Slaine manifested her severe emotional distress through extreme sleeplessness and insomnia, loss of enjoyment of life, severe weight loss, extreme public embarrassment, pain and suffering, and mental anguish.

## FIRST COUNTERCLAIM FOR RELIEF
### (COMMON LAW FRAUD)

152.    Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 107 through 151 above as if set forth fully herein.

153.    Ms. De Sesto intentionally and knowingly made materially false statements to Ms. Slaine concerning the amounts of money that Ms. Slaine owed to Ms. De Sesto. Specifically, Ms. De Sesto fraudulently and affirmatively misrepresented the amounts of money that Ms. De Sesto was owed.

154.    These misrepresentations were made by Ms. De Sesto to induce Ms. Slaine to pay Ms. De Sesto far in excess of the amounts that Ms. Slaine actually owed to Ms. De Sesto.

155. Ms. De Sesto made her misrepresentations with the knowledge and intention that Ms. Slaine would rely on them.

156. Ms. Slaine reasonably relied upon Ms. De Sesto's misrepresentations because of their long relationship and the fiduciary duty and duty of loyalty owed by an employee to accurately report work days and expenses.

157. Ms. Slaine recently discovered this fraud in or about November 2014.

158. Without Ms. De Sesto's scheme to obscure the number of days that she worked and the time periods for which she was requesting payment through her erratic requests for payment, as well as Ms. De Sesto's misrepresentations with regard to amounts owed to her, Ms. Slaine would have undertaken her own efforts to track amounts owed to Ms. De Sesto and pay Ms. De Sesto what she was properly owed.

159. Ms. Slaine has suffered compensatory damages in an amount to be determined at trial but not less than $50,000, pre and post judgment interest, punitive damages and costs, including attorneys' fees.

## SECOND COUNTERCLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

160. Plaintiff repeats and realleges each and every allegation contained in paragraphs 107 through 159 above as if set forth fully herein.

161. At all relevant times, Ms. Slaine paid Ms. De Sesto by check from a bank account owned and controlled by Ms. Slaine.

162. Ms. De Sesto knew that Ms. Slaine paid Ms. De Sesto from a bank account owned and controlled by Ms. Slaine. Nevertheless, Ms. De Sesto engaged in acts and omissions with the intent to obtain funds from Ms. Slaine's bank account for Ms. De Sesto's own personal use and to deprive Ms. Slaine of the funds in Ms. Slaine's bank account.

163.    If it is determined that there was no agreement between Ms. Slaine and Ms. De Sesto that Ms. De Sesto would accurately report when she worked and expenses incurred when requesting payment from Ms. Slaine, Ms. De Sesto will nonetheless be unjustly enriched at Ms. Slaine's expense by receiving payment from Ms. Slaine's bank account for periods that Ms. De Sesto did not actually work and expenses that Ms. De Sesto did not actually incur.

164.    As a direct and proximate result of Ms. De Sesto's conduct and omissions, Ms. Slaine has been damaged and is entitled to return of all amounts that Ms. Slaine paid to Ms. De Sesto for periods that Ms. De Sesto did not actually work or for work or expenses for which Ms. De Sesto was paid twice.

165.    Ms. Slaine is entitled to an award of all amounts paid to Ms. De Sesto in excess of the amounts actually owed to Ms. De Sesto for periods actually worked and expenses actually incurred in an amount to be determined at trial, but not less than $50,000.

## THIRD COUNTERCLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTY)

166.    Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 107 through 165 above as if set forth fully herein.

167.    For the times during which Ms. De Sesto worked for Ms. Slaine, Ms. De Sesto owed a fiduciary duty and a duty of loyalty to her employer.

168.    Ms. De Sesto breached her fiduciary duty and duty of loyalty to Ms. Slaine by intentionally misrepresenting and overstating Ms. De Sesto's time worked, expenses incurred and amounts owed to Ms. De Sesto by Ms. Slaine.

169.    Because of Ms. De Sesto's intentional misrepresentations and overstatement of time worked and expenses, Ms. De Sesto was paid by Ms. Slaine for periods that Ms. De Sesto

either did not work, expenses she did not incur, or was compensated twice for periods that Ms. De Sesto did work or expenses that she incurred.

170.   As a result, Ms. Slaine has been damaged in an amount to be determined at trial, but not less than $50,000, pre and post judgment interest, punitive damages and costs, including attorneys' fees.

## FOURTH COUNTERCLAIM FOR RELIEF
### (CIVIL THEFT)

171.   Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 107 through 170 above as if set forth fully herein.

172.   At all relevant times, Ms. Slaine paid Ms. De Sesto by check from a bank account owned and controlled by Ms. Slaine.

173.   Ms. De Sesto knew that Ms. Slaine paid Ms. De Sesto from a bank account owned and controlled by Ms. Slaine.  Nevertheless, Ms. De Sesto engaged in acts and omissions with the intent to obtain funds from Ms. Slaine's bank account for Ms. De Sesto's own personal use and to deprive Ms. Slaine of the funds in Ms. Slaine's bank account.

174.   As a result, Ms. Slaine is entitled to compensatory damages in an amount to be determined at trial, but not less than $50,000, pre and post judgment interest, punitive damages and costs, including attorneys' fees.

## FIFTH COUNTERCLAIM FOR RELIEF
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

175.   Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 107 through 174 above as if set forth fully herein.

176.   Ms. De Sesto's foregoing conduct was extreme and outrageous.

177.    Specifically, Ms. De Sesto's intimidation tactics and public organization and incitement of a campaign of anti-Semitic, anti-Zionist demonstrators disseminating information about Ms. Slaine which Ms. De Sesto knew to be false were not only utterly devoid of factual or legal merit, but were designed to frighten Ms. Slaine into paying Ms. De Sesto money to which Ms. De Sesto was aware she was not entitled and to cause Ms. Slaine extreme emotional trauma and distress.

178.    Ms. De Sesto intended to inflict emotional distress on Ms. Slaine or knew or should have known that emotional distress was the likely result of her conduct.

179.    As a result of Ms. De Sesto's conduct, Ms. Slaine has suffered severe emotional distress and has suffered damages in the form of extreme sleeplessness and insomnia, loss of enjoyment of life, severe loss of weight, extreme public embarrassment, pain and suffering, and mental anguish, the amount of which will be determined at trial.

180.    In addition, Ms. De Sesto's wanton, willful and malicious misconduct detailed in the preceding paragraphs entitles Ms. Slaine to an award of punitive damages and recovery of costs including attorneys' fees.

## SIXTH COUNTERCLAIM FOR RELIEF
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

181.    Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 107 through 180 above as if set forth fully herein.

182.    Ms. De Sesto should have realized that the aforementioned conduct was unreasonable and involved an unreasonable risk of causing emotional distress to Ms. Slaine.

183.    Ms. De Sesto should have realized that if she caused this emotional distress, such distress might result in illness or bodily harm.

184.    As a result of Ms. De Sesto's negligent infliction of emotional distress, Ms. Slaine has suffered severe emotional distress and has suffered damages in the form of extreme sleeplessness and insomnia, loss of enjoyment of life, severe loss of weight, extreme public embarrassment, pain and suffering, and mental anguish, the amount of which will be determined at trial.

185.    In addition, Ms. De Sesto's wanton, willful and malicious misconduct detailed in the preceding paragraphs entitles Ms. Slaine to an award of punitive damages and recovery of costs including attorneys' fees.

WHEREFORE, Defendant demands judgment against Plaintiff as follows:

1.    Denying the allegations and claims for relief in Plaintiff's Complaint, dismissing Plaintiff's Complaint and all claims and causes at action therein with prejudice;

2.    Ms. Slaine seeks damages in an amount to be determined at trial, but no less than $50,000, plus pre and post judgment interest, punitive damages and costs, including attorneys' fees; and

3.    For such other relief as the Court may deem just and proper.

Dated: April 22, 2015

MEISTER SEELIG & FEIN LLP

Jeffrey A. Kimmel
Mitchell Schuster
Howard Davis
125 Park Ave., 7th Floor
New York, NY 10017
(212) 655-3500
*Attorneys for Defendant Elyse Slaine*

TO:    *Counsel of Record via ECF*

# SCHEDULE A

**SCHEDULE A**

| Date | Amount | Check # | Over Payment |
|---|---|---|---|
| 3/5/2009 | $1,600.00 | 458 | $320.00 |
| 3/5/2009 | $2,094.58 | 459 | $174.58 |
| 5/8/2009 | $2,175.27 | 504 | $255.27 |
| 5/8/2009 | $2,175.27 | 505 | $255.27 |
| 6/5/2009 | $3,849.63 | 803 | $1,244.63 |
| 7/12/2009 | $2,000.00 | 809 | $240.00 |
| 7/12/2009 | $2,000.00 | 810 | $150.00 |
| 7/28/2009 | $270.16 | 815 | $270.16 |
| 9/11/2009 | $4,894.46 | 538 | $1,444.46 |
| 10/16/2009 | $4,112.84 | 562 | $387.84 |
| 11/3/2009 | $4,522.26 | 550 | $1,002.26 |
| 12/9/2009 | $4,286.45 | 579 | $926.45 |
| 1/18/2010 | $5,085.00 | 525 | $2,205.00 |
| 2/12/2010 | $4,445.59 | 560 | $925.59 |
| 3/4/2010 | $4,106.08 | 103 | $906.08 |
| 5/4/2010 | $4,000.00 | 113 | $1,120.00 |
| 5/4/2010 | $1,221.55 | 112 | $421.55 |
| 5/4/2010 | $4,409.00 | 111 | $889.00 |
| 6/12/2010 | $1,985.74 | 136 | $1,185.74 |
| 6/12/2010 | $3,000.00 | 135 | $235.00 |
| 7/15/2010 | $4,577.72 | 508 | $1,257.72 |
| 8/17/2010 | $4,373.20 | 524 | $883.20 |
| 9/20/2010 | $4,418.38 | 272 | $928.38 |
| 10/14/2010 | $4,318.69 | 529 | $363.69 |
| 11/19/2010 | $4,232.16 | 536 | $832.16 |
| 12/13/2010 | $1,200.00 | 577 | $690.00 |
| 12/16/2010 | $4,279.28 | 603 | $879.28 |
| 1/21/2011 | $4,272.83 | 284 | $1,212.83 |
| 2/18/2011 | $4,170.16 | 570 | $770.16 |
| 3/16/2011 | $1,650.00 | 631 | $800.00 |
| 3/18/2011 | $4,056.00 | 633 | $656.00 |
| 4/15/2011 | $4,120.00 | 290 | $720.00 |
| 5/10/2011 | $3,738.39 | 642 | $1,188.39 |
| 6/15/2011 | $4,154.56 | 582 | $754.56 |
| 7/21/2011 | $5,183.40 | 688 | $288.40 |
| 8/19/2011 | $5,368.00 | 587 | $1,198.00 |
| 9/21/2011 | $5,047.61 | 801 | $1,387.61 |
| 10/20/2011 | $4,920.20 | 827 | $625.20 |
| 11/17/2011 | $3,618.45 | 833 | $558.45 |
| 12/15/2011 | $4,194.04 | 842 | $624.04 |
| 1/7/2012 | $3,831.00 | 862 | $941.00 |
| 2/17/2012 | $3,849.73 | 718 | $109.73 |
| 3/16/2012 | $3,667.69 | 736 | $97.69 |
| 5/9/2012 | $4,659.00 | 750 | $919.00 |
| 5/9/2012 | $4,659.00 | 882 | $409.00 |
| 6/13/2012 | $3,772.21 | 942 | $497.21 |
| 8/12/2012 | $4,210.00 | 916 | $550.00 |
| 8/12/2012 | $4,221.55 | 915 | $1,921.55 |
| 9/13/2012 | $4,111.79 | 782 | $791.79 |
| 11/22/2012 | $9,325.89 | 759 | $1,675.89 |
| 1/18/2013 | $9,752.07 | 956 | $2,442.07 |
| 2/14/2013 | $4,981.97 | 968 | $1,071.97 |
| 3/23/2013 | $4,824.95 | 977 | $1,424.95 |
| 5/1/2013 | $4,235.49 | 988 | $665.49 |
| 5/13/2013 | $5,200.00 | 995 | $1,970.00 |
| 7/9/2013 | $10,688.99 | 1329 | $3,198.99 |
| 9/20/2013 | $4,304.44 | 1351 | $644.44 |
| 9/20/2013 | $4,880.00 | 1352 | $880.00 |
| 11/28/2013 | $8,000.00 | 1382 | $755.00 |
| 12/6/2013 | $5,474.00 | 1386 | $2,054.00 |
| 1/10/2014 | $4,659.36 | 1400 | $519.36 |
| 1/31/2014 | $4,200.00 | 1409 | $660.00 |
| 3/14/2014 | $3,615.00 | 1427 | $215.00 |
| 4/26/2014 | $3,471.87 | 1017 | $71.87 |
| 4/16/2014 | $650.00 | 1020 | $50.00 |
| 5/30/2014 | $4,000.00 | 1024 | $400.00 |
| **TOTAL** | **$277,142.95** | | |

| | |
|---|---|
| Credit for Paid Time Off: | $ (4,390.00) |
| Total Over Payment: | $51,722.95 |