UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
MARICHU DE SESTO,

                Plaintiff,

       -v-

ELYSE SLAINE,

               Defendant.
--------------------------------------------------------------------X

Case Number:

15-cv-01118 (AJN) (JCF)

**ELYSE SLAINE'S AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO COMPLAINT**

Defendant Elyse Slaine ("Defendant" or "Ms. Slaine"), for her Amended Answer, Affirmative Defenses, and Counterclaims to the Complaint (the "Complaint"), states and alleges as follows:

## RESPONSE TO PRELIMINARY STATEMENT

1.      Defendant denies the allegations contained in paragraph 1 of the Complaint, except admits that Marichu De Sesto ("Plaintiff" or "Ms. De Sesto") began working for Defendant in or around July 2000.

2.      Defendant denies the allegations contained in paragraph 2 of the Complaint.

3.      Defendant denies the allegations contained in paragraph 3 of the Complaint.

4.      The statements set forth in paragraph 4 of the Complaint are not statements of fact and as such do not require that Defendant admits or denies such statements. To the extent that paragraph 4 of the Complaint requires a response, Defendant denies the allegations set forth in paragraph 4 of the Complaint.

## RESPONSE TO JURISDICTION AND VENUE

5.      Defendant neither admits nor denies the allegations contained in paragraph 5 of the Complaint in that paragraph 5 calls for a legal conclusion.

6.      Defendant neither admits nor denies the allegations contained in paragraph 6 of the Complaint in that paragraph 6 calls for a legal conclusion.

7.      Defendant neither admits nor denies the allegations contained in paragraph 7 of the Complaint in that paragraph 7 calls for a legal conclusion.

8.      Defendant neither admits nor denies the allegations contained in paragraph 8 of the Complaint in that paragraph 8 calls for a legal conclusion.

## RESPONSE TO PARTIES

9.      Defendant denies the allegations contained in paragraph 9 of the Complaint, except admits that Plaintiff began working for Defendant in or around July 2000.

10.     Defendant denies the allegations contained in paragraph 10 of the Complaint, except admits that she resides at 925 Park Ave., New York, NY and owns a property at 37 Jule Pond Drive, Southampton, NY.

11.     To the extent that paragraph 11 calls for a legal conclusion, Defendant is not required to respond.  Defendant denies the remaining allegations contained in paragraph 11 of the Complaint.

12.     Defendant admits the allegations contained in paragraph 12 of the Complaint.

13.     Defendant denies the allegations contained in paragraph 13 of the Complaint.

## RESPONSE TO STATEMENT OF FACTS

14.     Defendant denies the allegations contained in paragraph 14 of the Complaint, except admits that Plaintiff began working for Defendant in or around July 2000.

15.     Defendant denies the allegations contained in paragraph 15 of the Complaint.

16.     Defendant denies the allegations contained in paragraph 16 of the Complaint.

17.     Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.     Defendant denies the allegations contained in paragraph 18 of the Complaint.

19.     Defendant denies the allegations contained in paragraph 19 of the Complaint.

20.     Defendant denies the allegations contained in paragraph 20 of the Complaint.

21.     Defendant denies the allegations contained in paragraph 21 of the Complaint, except admits that throughout Plaintiff's employment, but not on all on a daily basis, Plaintiff purchased groceries for Defendant using Defendant's credit card, did light laundry, light housekeeping, cooked dinner for Defendant on a rare occasion, and fed Defendant's dogs once or twice a day on the days that Plaintiff worked by herself.

22.     Defendant denies the allegations contained in paragraph 22 of the Complaint, except admits that Plaintiff was required to sleep overnight at Defendant's home when Plaintiff worked a day and was scheduled to work for Defendant the next day.

23.     Defendant denies the allegations contained in paragraph 23 of the Complaint.

24.     Defendant denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, except Defendant states that Plaintiff regularly received mail and packages addressed to Plaintiff delivered to Defendant's residence and filled a large dresser and a large closet with personal belongings in Defendant's New York residence during the relevant time period.

25.     Defendant denies the allegations contained in paragraph 25 of the Complaint.

26.     Defendant denies the allegations contained in paragraph 26 of the Complaint.

27.     Defendant denies the allegations contained in paragraph 27 of the Complaint.

28.     Defendant denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint, except Defendant states that regardless of Plaintiff's intent, Plaintiff did reside at Defendant's home.

29.     To the extent that paragraph 29 calls for a legal conclusion, Defendant is not required to respond.  Defendant denies the remaining allegations contained in paragraph 29 of the Complaint.

30.     Defendant denies the allegations contained in paragraph 30 of the Complaint.

31.     To the extent that paragraph 31 calls for a legal conclusion, Defendant is not required to respond.

32.     To the extent that paragraph 32 calls for a legal conclusion, Defendant is not required to respond.

33.     Defendant denies the allegations contained in paragraph 33 of the Complaint.

34.     To the extent that paragraph 34 calls for a legal conclusion, Defendant is not required to respond.

35.     Defendant denies the allegations contained in paragraph 35 of the Complaint, except Defendant states that Defendant would pay Plaintiff on dates and times determined by Plaintiff and that Plaintiff refused to accept payment on a regular basis.

36.     Defendant denies the allegations contained in paragraph 36 of the Complaint.

37.     Defendant denies the allegations contained in paragraph 37 of the Complaint.

## RESPONSE TO COUNT 1

38.     Defendant repeats and realleges the above paragraphs as if fully set forth herein.

39.     To the extent that paragraph 39 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 39 of the Complaint.

40.     To the extent that paragraph 40 calls for a legal conclusion, Defendant is not required to respond.

41.     To the extent that paragraph 41 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 41 of the Complaint.

42.     Defendant denies the allegations contained in paragraph 42 of the Complaint.

43.     Defendant denies the allegations contained in paragraph 43 of the Complaint.

44.     Defendant denies the allegations contained in paragraph 44 of the Complaint.

## RESPONSE TO COUNT 2

45.     Defendant repeats and realleges the above paragraphs as if fully set forth herein.

46.     To the extent that paragraph 46 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 46 of the Complaint.

47.     To the extent that paragraph 47 calls for a legal conclusion, Defendant is not required to respond.

48.     To the extent that paragraph 48 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 48 of the Complaint.

49.     Defendant denies the allegations contained in paragraph 49 of the Complaint.

50.     Defendant denies the allegations contained in paragraph 50 of the Complaint.

51.     Defendant denies the allegations contained in paragraph 51 of the Complaint.

## RESPONSE TO COUNT 3

52.     Defendant repeats and realleges the above paragraphs as if fully set forth herein.

53.     To the extent that paragraph 53 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 53 of the Complaint.

54.     To the extent that paragraph 54 calls for a legal conclusion, Defendant is not required to respond.

55.     Defendant denies the allegations contained in paragraph 55 of the Complaint.

56.     Defendant denies the allegations contained in paragraph 56 of the Complaint.

57.     Defendant denies the allegations contained in paragraph 57 of the Complaint.

## RESPONSE TO COUNT 4

58.     Defendant repeats and realleges the above paragraphs as if fully set forth herein.

59.     To the extent that paragraph 59 calls for a legal conclusion, Defendant is not required to respond.  To the extent that a response is required, Defendant denies the remaining allegations contained in paragraph 59 of the Complaint.

60.     To the extent that paragraph 60 calls for a legal conclusion, Defendant is not required to respond.

61.     Defendant denies the allegations contained in paragraph 61 of the Complaint.

62.     Defendant denies the allegations contained in paragraph 62 of the Complaint.

63.     Defendant denies the allegations contained in paragraph 63 of the Complaint.

## RESPONSE TO COUNT 5

64.     Defendant repeats and realleges the above paragraphs as if fully set forth herein.

65.     Defendant denies the allegations contained in paragraph 65 of the Complaint.

66.     Defendant denies the allegations contained in paragraph 66 of the Complaint.

67.     Defendant denies the allegations contained in paragraph 67 of the Complaint.

68.     Defendant denies the allegations contained in paragraph 68 of the Complaint.

69.     Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.     Defendant denies the allegations contained in paragraph 70 of the Complaint.

71.     Defendant denies the allegations contained in paragraph 71 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

72.     Defendant asserts the following affirmative defenses without assuming any burden of production or proof that she would not otherwise have.

## FIRST AFFIRMATIVE DEFENSE

73.     The Complaint fails to state a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

74.     Any damages purportedly suffered by Plaintiff are a result of her own action or inaction and/or negligence, or the negligence of third parties beyond Defendant's control.

## THIRD AFFIRMATIVE DEFENSE

75.     At all relevant times during her employment with Defendant, Plaintiff was a live-in domestic worker and therefore was at all relevant times exempt from overtime requirements of the Fair Labor Standards Act.

## FOURTH AFFIRMATIVE DEFENSE

76.     At all relevant times during her employment with Defendant, Plaintiff was a live-in domestic worker and therefore was exempt from the New York Labor Law until, at the earliest, November 29, 2010.

## FIFTH AFFIRMATIVE DEFENSE

77.     At all relevant times during her employment with Defendant, Plaintiff was a live-in domestic worker and therefore, to the extent that the New York Domestic Workers' Bill of

Rights was in effect, Plaintiff was not entitled to overtime payment because she never worked 44 hours or more in any given week.

### SIXTH AFFIRMATIVE DEFENSE

78.     Plaintiff's claims are barred in whole or in part by the applicable statute of limitations pursuant to 29 U.S.C §§ 255-256 and/or New York Labor Law.

### SEVENTH AFFIRMATIVE DEFENSE

79.     Defendant at all times, and in all manners, acted in accordance with any and all duties and obligations she may have had under the FLSA and/or New York Labor Law.

### EIGHTH AFFIRMATIVE DEFENSE

80.     Plaintiff cannot establish that any acts or omissions were willful under the FLSA or the New York Labor Law.

### NINTH AFFIRMATIVE DEFENSE

81.     Plaintiff's claims are barred due to the live-in domestic service employee exemption or other statutory exemptions to the FLSA and/or New York state law.

### TENTH AFFIRMATIVE DEFENSE

82.     Plaintiff's claims are barred in whole or in part as Plaintiff earned more than minimum wage for every hour that she worked.

### ELEVENTH AFFIRMATIVE DEFENSE

83.     Plaintiff's claims are barred in whole or in part based upon the "day rate" provisions of 29 C.F.R. 778.112 and applicable New York State law.

### TWELFTH AFFIRMATIVE DEFENSE

84.     This court lacks subject matter jurisdiction over some or all of the claims asserted by Plaintiff.

**THIRTEENTH AFFIRMATIVE DEFENSE**

85.      Defendant states, in the alternative, if necessary, that any actions taken with respect to Plaintiff were taken in good faith in conformity with and in reliance on a written administrative regulation, order, ruling, approval, interpretation, and/or administrative practice or policy, and/or with reasonable grounds to believe such conduct complied with the FLSA and/or New York Labor Law or interpretations of those statutes.

**FOURTEENTH AFFIRMATIVE DEFENSE**

86.      To the extent that Plaintiff and Defendant entered into an agreement, Plaintiff's claims are barred as she was the first breaching party.

**FIFTEENTH AFFIRMATIVE DEFENSE**

87.      Plaintiff's claims are barred due to her own intentional misrepresentations.

**SIXTEENTH AFFIRMATIVE DEFENSE**

88.      Defendant is entitled to any and all offsets and/or set offs permissible by law.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

89.      Plaintiff's claims are barred due to the statute of frauds.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

90.      Plaintiff's claims are barred due to the *de minimis* rule.

**NINETEENTH AFFIRMATIVE DEFENSE**

91.      Plaintiff's claims are barred because Plaintiff was compensated for every hour worked.

**TWENTIETH AFFIRMATIVE DEFENSE**

92.      Plaintiff's claims are barred because the parties had a clear mutual understanding that the amounts paid to Plaintiff were for all hours worked.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

93.    Plaintiff's claims are barred because Plaintiff represented the hours worked, expenses incurred and amounts purportedly owed to Plaintiff by Ms. Slaine.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

94.    Plaintiff's claims are barred because Plaintiff was required to record the hours worked and submit to Defendant pursuant to prevailing law, including, but not limited to, 29 C.F.R. § 552.110(d).

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

95.    Plaintiff's claims are barred by the doctrine of *In Pari Delicto*.

## DEFENDANT'S COUNTERCLAIM

## NATURE OF COUNTERCLAIM

96.    Ms. Slaine's counterclaims arise from Ms. De Sesto's betrayal of Plaintiff's trust and confidences by intentionally misstating her own hours worked and expenses incurred to fraudulently induce Ms. Slaine to pay Ms. De Sesto over $275,000 between February 2009 and May 2014 when Ms. De Sesto was actually entitled to wages and expense reimbursements of no more than $225,000.

97.    By making affirmative misrepresentations to Ms. Slaine, Ms. De Sesto induced Ms. Slaine to overpay Ms. De Sesto in excess of $50,000 over this period.

98.    Despite being overpaid, after Ms. De Sesto quit her employment, Ms. De Sesto then employed extreme and outrageous conduct, including attempting to smear Ms. Slaine's name and reputation with malicious intent and for the purpose of trying to compel Ms. Slaine to pay even more money to Ms. De Sesto to which Ms. De Sesto was neither owed nor entitled.

99.     Ms. De Sesto knowingly engaged in a campaign of harassment including but not limited to organizing protests, including a marching band for hire and extreme special interests professional protest groups with the intent to cause, or reckless disregard of the likelihood that such conduct would cause, extreme emotional distress to Ms. Slaine.

## PARTIES

100.     Ms. Slaine is a natural person residing at 925 Park Ave., New York, NY.

101.     Ms. De Sesto is a natural person residing at an unknown location.

## JURISDICTION AND VENUE

102.     This Court has jurisdiction to adjudicate the relief sought herein pursuant to Fed. R. Civ. P. 13(a).

103.     Venue is appropriate in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## FACTS

104.     Ms. De Sesto began working for Mr. and Ms. Slaine in or around July 2000.

105.     While Ms. De Sesto worked for Defendant off and on between July 2000 and May 2014, during the time period that Ms. De Sesto worked for Ms. Slaine, Ms. De Sesto worked as a live-in domestic service employee.

106.     In or around October 2008, Mr. and Ms. Slaine separated and Mr. Slaine moved out of the 925 Park Avenue residence.

107.     In November 2008, Ms. De Sesto requested to be paid in longer time intervals, rather than on a bi-weekly basis. Going forward, Ms. De Sesto would record when she worked

and would submit the amounts that she was owed by Ms. Slaine on pay days chosen by Ms. De Sesto.

108.    Ms. De Sesto represented at that time that she needed this arrangement to "help her save money," that she claimed she would otherwise spend.

109.    In connection with this request, Ms. De Sesto committed to keeping track of when she worked, expenses that she incurred and the amounts that Ms. Slaine owed to Ms. De Sesto for the relevant work period.

110.    Ms. De Sesto made this request to Ms. Slaine while they were both in the office of Ms. Slaine's 925 Park Avenue residence.

111.    Ms. Slaine consented to this arrangement out of a sense of loyalty to Ms. De Sesto and placed her trust in Ms. De Sesto to act in good faith.

112.    For each pay period, Ms. De Sesto would present Ms. Slaine with how much she claimed to be owed for work and expenses for which Ms. De Sesto claimed to be owed.

113.    However, upon information and belief, Ms. De Sesto requested this arrangement so that she could more easily obscure when she actually worked and claim that she worked more than she did in support of a scheme to defraud Ms. Slaine and to be paid in excess of what she was actually owed.

114.    Throughout the period that Ms. De Sesto worked for Ms. Slaine, Ms. De Sesto intentionally requested payment from Ms. Slaine either for periods that Ms. De Sesto did not work or expenses that Ms. De Sesto did not incur, or requested payment twice for the same work period that Ms. De Sesto did work or expenses that she did incur.

115.    Ms. De Sesto worked approximately five (5) days per week during the relevant time period until mid-January 2014 when Ms. De Sesto began working four (4) days per week.

Occasionally, Ms. De Sesto and the other domestic worker would swap work days. Occasionally, the other domestic worker would cover for Ms. De Sesto when she missed a day of work. Ms. De Sesto would rarely cover for the other domestic worker.

116.    After a comprehensive review of Ms. De Sesto's regular work schedule, the work schedules of other domestic workers who worked for Ms. Slaine during the relevant time period, as well as text messages, emails, calendar entries, paychecks, and credit card receipts, indicating Ms. De Sesto's days off and days that she did work, Ms. Slaine has identified Ms. De Sesto's days worked during the relevant time period.

117.    By way of example, attached hereto collectively as **Schedule A** are charts and documents setting forth the number of Ms. De Sesto's work days for the periods February 2010 through April 2010, March 2012 through May 2012, and May 2013 through August 2013.  The summaries at the top of pages 1, 7 and 11 of **Schedule A** identify:

- the dates of paychecks,

- the amounts of the paychecks,

- the check numbers,

- the applicable daily pay rate,

- any memo notes written by the respective domestic worker on the check,

- the relevant pay period,

- the number of calendar days during the pay period,

- the number of regular work days worked and paid during the pay period, and

- the number of holidays worked during the relevant time period for which double the daily rate was paid.

118.     In addition, in the last two columns the total amount of work pay for days worked during the relevant period is compared to the amount actually paid which reveals the amount of overpayment during the relevant time period in the final column of **Schedule A** pages 1, 7 and 11.

119.     The yellow highlighted cells on **Schedule A** reflect days that Ms. De Sesto worked and the green shaded cells are days on which Ms. De Sesto did not work.  Notably, Ms. De Sesto was paid double her daily rate for her work on Independence Day, July 4, 2013.

120.     Paychecks to Ms. De Sesto for these periods, as a sample, are also attached as part of **Schedule A**.

121.     Ms. De Sesto's work schedule would overlap with another domestic worker over most of the relevant time period.  Ms. De Sesto's regular schedule during non-summer months was to work Monday to Friday overlapping two (2) days per week (Monday and Friday) with another domestic worker.  During summer months, Ms. De Sesto's regular schedule would be to work Wednesday to Sunday and would overlap with another domestic worker on Friday, Saturday and Sunday.  If one domestic worker worked more than her regular schedule, it would mean that the other worker did not work.

122.     An analysis of the work days of Ms. De Sesto's coworker, Loreilynn Khan, for the period May 2013 through August 2013 is also made a part of **Schedule A** at pages 15 – 30.  Ms. Khan's work schedule, which is supported by sample paychecks to Ms. Khan also attached to **Schedule A**, establishes the number of days that Ms. Khan worked (based upon Ms. Khan's regular work schedule, the date of the check, the amount of the check, Ms. Khan's daily rate, and, on numerous occasions, the dates of work identified in the memo line of the check).  Ms. De

Sesto's schedule for this period can be corroborated through an analysis of Ms. Khan's schedule, made a part of **Schedule A**.

123.    Notably, while Ms. Slaine's apartment was renovated in early 2010, Ms. De Sesto stayed in her own room in the Four Seasons Hotel during her work days from February 15, 2010 through April 2, 2010.   During this period, though Ms. De Sesto received her full pay rate, Ms. De Sesto did not have to perform any housekeeping duties.   An invoice to Ms. Slaine from the Four Seasons from this period is also attached as part of **Schedule A** at page 6.

124.    A similar analysis has been done to establish Ms. De Sesto's work days for the entire relevant time period, a summary of which is attached hereto as **Schedule B**.

125.    **Schedule B** attached hereto is a chart reflecting payments made to Ms. De Sesto by Ms. Slaine during the relevant time period, including the

- date of the check,

- the check number,

- the amount of the check,

- the number of days worked for which the pay compensated Ms. De Sesto,

- the applicable daily pay rate,

- the pay due based on the number of days worked, and

- the amount of the overpayment made to Ms. De Sesto based on Ms. De Sesto's intentional misrepresentations.

126.    **Schedule B** also sets forth any memo line notes made by Ms. De Sesto on the checks, the number of holidays that occurred during the relevant time period for which Ms. De Sesto would be paid double, and the number of calendar days during the subject period.

127.    With rare exceptions, Ms. De Sesto made the requests for payment on the same date as the date of the checks identified on **Schedule B**.

128.    These requests for payment set forth on **Schedule B** were made by Ms. De Sesto at Ms. Slaine's 925 Park Ave. residence and were often requested at night when Ms. Slaine was in bed.

129.    Ms. De Sesto made the identified overpayment requests even though she knew them to be false when she made them.  Ms. De Sesto knew that she did not, in fact, work the days for which she was seeking payment or incur expenses to support the overpayments and, despite that knowledge, Ms. De Sesto still requested and accepted the over payments.

130.    By multiplying Ms. De Sesto's work days and Ms. De Sesto's rate of pay, it is apparent that Ms. De Sesto requested and received substantial overpayments far in excess of amounts due for days worked or any reimbursed expenses.

131.    Ms. De Sesto did not incur substantial expenses because Ms. De Sesto had access to Ms. Slaine's credit cards and would charge nearly all expenses to the credit card.  Ms. De Sesto was instructed to use Ms. Slaine's credit card whenever possible when purchasing items for Ms. Slaine's benefit.

132.    Ms. Slaine accepted the amounts Ms. De Sesto claimed she was due because of the parties' long relationship and in reliance on Ms. De Sesto's presumed honesty and loyalty to Ms. Slaine.

133.    Ms. De Sesto knowingly and intentionally claimed work periods, expenses and amounts that were inaccurate and overstated such amounts allegedly owed to Ms. De Sesto by Ms. Slaine when submitting for payment.

134.    On May 16, 2014 Ms. De Sesto quit her employment. At no time prior to Ms. De Sesto quitting her employment did Ms. De Sesto indicate in any way that she believed that she had been underpaid or not paid properly.

135.    Without giving Ms. Slaine any notice of her alleged belief that she was not paid overtime, upon information and belief, Ms. De Sesto organized through social media, including Facebook, an aggressive "protest" stationed outside of Ms. Slaine's Manhattan residence on October 29, 2014.

136.    This protest was advertised on Facebook on October 21, 2014.

137.    In connection with the aforementioned protest, upon information and belief, at Ms. De Sesto's direction, fliers were prepared and distributed featuring, *inter alia*, a large photograph of Ms. Slaine with words in large print stating "Elyse Slaine: **WAGE THIEF!**"

138.    Fliers were distributed, upon information and belief, at Ms. De Sesto direction which also stated "We are marching today in support of Filipina domestic work Marichu De Sesto, whose wages have been stolen from her by millionaire socialite Elyse Slaine."

139.    The fliers went on to state "Marichu is leading today's march to the home of her former Park Avenue employers. There we will deliver a demand letter for her unpaid and overtime wages. Marichu will speak out about her years of long hours, unpaid overtime and abrupt termination after requesting time off for medical reasons."

140.    At all times Ms. De Sesto knew the above outrageous and inflammatory statements on the distributed fliers to be demonstrably false.

141.    In addition, while Ms. De Sesto is well aware of the fact that Ms. Slaine is Jewish, and that she is the daughter of a Holocaust survivor, Ms. De Sesto, upon information and belief, intentionally and knowingly enlisted the assistance and appearance of individuals and

organizations at the "protests" and public smear campaign against Ms. Slaine, which individuals and organizations have a strong and well-known history of publicly espousing anti-Semitic and anti-Zionist views and opinions.

142.    Ms. De Sesto maliciously enlisted these organizations in order to cause Ms. Slaine emotional distress and harm her well-being in order to intimidate, harass, and cause Ms. Slaine extreme embarrassment, trauma, and severe emotional distress.

143.    Specifically, upon information and belief, Ms. De Sesto arranged for Ben Becker to sign a threatening letter sent to Ms. Slaine's home on behalf of an organization known as Justice First.  Mr. Becker also personally appeared several times at the doorsteps of Ms. Slaine's apartment building to hand out libelous fliers about Ms. Slaine.

144.    Upon information and belief, Mr. Becker is the regional organizer for the A.N.S.W.E.R. Coalition, founding member of the PSL (Party for Socialism and Liberation), co-founder of Justice First, and was the organizer/speaker at numerous anti-Zionist rallies, including an anti-Zionist rally in Times Square last year in which signs with swastikas were prominently displayed, and at which Israel was compared to the Nazi regime.

145.    According to the Anti-Defamation League: "Under the guise of an antiwar and antiracist agenda, A.N.S.W.E.R. regularly promotes and organizes anti-Israel demonstrations and works hand-in-hand with many of the major anti-Israel groups in the United States. Representatives of A.N.S.W.E.R. openly express extreme views, including blatant support for terrorist groups like Hamas and Hezbollah that target Israeli civilians and support the destruction of the state of Israel."[1]

---

[1]    http://archive.adl.org/main_anti_israel/iac_answer_backgrounder.html#.VTfeMiFViko, accessed April 22, 2015.

146.    Upon information and belief, Ms. De Sesto enlisted members of the extremist, anti-Semitic, anti-Zionist Al-Awda group to personally participate in the rally in front of Ms. Slaine's building. Among them was Ms. Lamis Deek, board member of a Council on American-Islamic Relations ("CAIR") affiliated group, CAIR-NY, which, upon information and belief, was recently declared a terrorist organization by the UAE, and co-founder of Al-Awda NY.  Upon information and belief, during Al-Awda's annual convention in New York City in April 2004, Ms. Deek called Israeli soldiers "Zionist henchmen" and "Nazis," and stated that Al-Awda embodied the "ultimate rejection of Zionism."[2]   She also said that "the Zionist-Israeli government has no right to exist" and called for "the full dismantlement of all Zionist structures."[3]

147.    Moreover, upon information and belief, Ms. De Sesto enlisted the assistance of Leah Obias, a Damayan coordinator, to lead the coercive protest in front of Ms. Slaine's home.

148.    The protests and statements made during the protests were meant to shake down Ms. Slaine and force Ms. Slaine to pay money to Ms. De Sesto to which Ms. De Sesto knows she is not entitled.

149.    For example, upon information and belief, at Ms. De Sesto's request, Leah Obias of the "Damayan" organization publicly threatened during the protests that "[w]e'll be back here every day until [Ms. Slaine] pays. We're gonna continue a long term campaign, a publicity campaign, until Elyse Slaine, wage thief pays Marichu her wages."

150.    Ms. Slaine was damaged when these anti-Semitic, anti-Zionist and Holocaust-trivializing groups held up libelous banners with images of Ms. Slaine, while Ms. Obias, upon information and belief, at Ms. De Sesto's direction, screamed Ms. Slaine's name into a bullhorn,

---

[2]    http://archive.adl.org/israel/anti_israel/al_awda/chronology.html#.VTfhaSFViko, accessed April 22, 2015.
[3]    https://www.youtube.com/watch?v=4ax62cyhrEI;
https://www.youtube.com/watch?v=1D66JSmgiUI, accessed April 22, 2015.

and demanded that she come down and face the "angry mob" as the "Rude Mechanical Orchestra," a marching band for hire, played loud, disturbing music. This disturbance outside of Ms. Slaine's residence was, upon information and belief, intended to terrorize, harass, intimidate, and publicly humiliate Ms. Slaine.

151.    Demonstrations continued outside of Ms. Slaine's Manhattan residence on a daily basis which consisted of chants, and mass distribution of fliers in front of Ms. Slaine's building and throughout her neighborhood.   Moreover, threatening posts were made on social media, which posts included Ms. Slaine's home address encouraging mobs of people to show up in front of Ms. Slaine's home until Ms. Slaine "pays up."

152.    By these tactics, Ms. De Sesto sought to cause Ms. Slaine extreme emotional distress, or acted in reckless disregard of same.

153.    Ms. Slaine suffered extreme emotional distress from the strain of the constant protests outside of her home, the knowingly false statements disseminated by fliers distributed outside of her home and in her neighborhood and social media as well as the participation of known anti-Zionist and anti-Semitic individuals and organizations.

154.    Ms. Slaine manifested her severe emotional distress through extreme sleeplessness and insomnia, loss of enjoyment of life, severe weight loss, extreme public embarrassment, pain and suffering, and mental anguish.

## FIRST COUNTERCLAIM FOR RELIEF
### (COMMON LAW FRAUD)

155.    Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 96 through 154 above as if set forth fully herein.

156.    Ms. De Sesto intentionally and knowingly made materially false statements to Ms. Slaine concerning the amounts of money that Ms. Slaine owed to Ms. De Sesto.

Specifically, Ms. De Sesto fraudulently and affirmatively misrepresented the amounts of money that Ms. De Sesto was owed.

157.   These misrepresentations were made by Ms. De Sesto to induce Ms. Slaine to pay Ms. De Sesto far in excess of the amounts that Ms. Slaine actually owed to Ms. De Sesto.

158.   Ms. De Sesto made her misrepresentations with the knowledge and intention that Ms. Slaine would rely on them.

159.   Ms. Slaine reasonably relied upon Ms. De Sesto's misrepresentations because of their long relationship and the fiduciary duty and duty of loyalty owed by an employee to accurately report work days and expenses.

160.   Ms. Slaine recently discovered this fraud in or about November 2014.

161.   Without Ms. De Sesto's scheme to obscure the number of days that she worked and the time periods for which she was requesting payment through her erratic requests for payment, as well as Ms. De Sesto's misrepresentations with regard to amounts owed to her, Ms. Slaine would have undertaken her own efforts to track amounts owed to Ms. De Sesto and pay Ms. De Sesto what she was properly owed.

162.   Ms. Slaine has suffered compensatory damages in an amount to be determined at trial but not less than $50,000, pre and post judgment interest, punitive damages and costs, including attorneys' fees.

## SECOND COUNTERCLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

163.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 96 through 162 above as if set forth fully herein.

164.    At all relevant times, Ms. Slaine paid Ms. De Sesto by check, except for on two (2) occasions when Ms. Slaine paid Ms. De Sesto with cash, from bank accounts owned and controlled by Ms. Slaine.

165.    Ms. De Sesto knew that Ms. Slaine paid Ms. De Sesto from a bank account owned and controlled by Ms. Slaine.   Nevertheless, Ms. De Sesto engaged in acts and omissions with the intent to obtain funds from Ms. Slaine's bank account for Ms. De Sesto's own personal use and to deprive Ms. Slaine of the funds in Ms. Slaine's bank account.

166.    If it is determined that there was no agreement between Ms. Slaine and Ms. De Sesto that Ms. De Sesto would accurately report when she worked and expenses incurred when requesting payment from Ms. Slaine, Ms. De Sesto will nonetheless be unjustly enriched at Ms. Slaine's expense by receiving payment from Ms. Slaine's bank account for periods that Ms. De Sesto did not actually work and expenses that Ms. De Sesto did not actually incur.

167.    As a direct and proximate result of Ms. De Sesto's conduct and omissions, Ms. Slaine has been damaged and is entitled to return of all amounts that Ms. Slaine paid to Ms. De Sesto for periods that Ms. De Sesto did not actually work or for work or expenses for which Ms. De Sesto was paid twice.

168.    Ms. Slaine is entitled to an award of all amounts paid to Ms. De Sesto in excess of the amounts actually owed to Ms. De Sesto for periods actually worked and expenses actually incurred in an amount to be determined at trial, but not less than $50,000.

**THIRD COUNTERCLAIM FOR RELIEF**
**(BREACH OF FIDUCIARY DUTY)**

169.    Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 96 through 168 above as if set forth fully herein.

170.    For the times during which Ms. De Sesto worked for Ms. Slaine, Ms. De Sesto owed a fiduciary duty and a duty of loyalty to her employer.

171.    Ms. De Sesto breached her fiduciary duty and duty of loyalty to Ms. Slaine by intentionally misrepresenting and overstating Ms. De Sesto's time worked, expenses incurred and amounts owed to Ms. De Sesto by Ms. Slaine.

172.    Because of Ms. De Sesto's intentional misrepresentations and overstatement of time worked and expenses, Ms. De Sesto was paid by Ms. Slaine for periods that Ms. De Sesto either did not work, expenses she did not incur, or was compensated twice for periods that Ms. De Sesto did work or expenses that she incurred.

173.    As a result, Ms. Slaine has been damaged in an amount to be determined at trial, but not less than $50,000, pre and post judgment interest, punitive damages and costs, including attorneys' fees.

## FOURTH COUNTERCLAIM FOR RELIEF
### (CONVERSION)

174.    Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 96 through 173 above as if set forth fully herein.

175.    At all relevant times, Ms. Slaine paid Ms. De Sesto by check, except for on two (2) occasions when Ms. Slaine paid Ms. De Sesto with cash, from bank accounts owned and controlled by Ms. Slaine.

176.    Ms. De Sesto knew that Ms. Slaine paid Ms. De Sesto from a bank account owned and controlled by Ms. Slaine.  Nevertheless, Ms. De Sesto engaged in acts and omissions with the intent to obtain funds from Ms. Slaine's bank account for Ms. De Sesto's own personal use and to deprive Ms. Slaine of the funds in Ms. Slaine's bank account.

177.   As a result, Ms. Slaine is entitled to compensatory damages in an amount to be determined at trial, but not less than $50,000, pre and post judgment interest, punitive damages and costs, including attorneys' fees.

## FIFTH COUNTERCLAIM FOR RELIEF
### (FAITHLESS SERVANT)

178.   Ms. Slaine repeats and realleges each and every allegation contained in paragraphs 96 through 177 above as if set forth fully herein.

179.   For the times during which Ms. De Sesto was Ms. Slaine's employee, Ms. De Sesto owed Ms. Slaine fiduciary duties, including duties of care, utmost good faith, undivided and unqualified loyalty, fair disclosure and candor.   Ms. De Sesto's fiduciary duties also included the duty to accurately track, account and report days worked, expenses incurred, and amounts due and owing to Ms. De Sesto, and not to submit false information to Ms. Slaine in order to receive payments to which Ms. De Sesto was not entitled.

180.   Ms. De Sesto breached her fiduciary duty and duty of loyalty to Ms. Slaine by intentionally misrepresenting and overstating Ms. De Sesto's time worked, expenses incurred and amounts owed to Ms. De Sesto by Ms. Slaine with the intent of obtaining payments from Ms. Slaine in excess of amounts owed to Ms. De Sesto without Ms. Slaine's knowledge or consent.

181.   Such conduct by Ms. De Sesto substantially violated the terms of Ms. De Sesto's employment with Ms. Slaine which required that Ms. De Sesto accurately report her days worked and expenses incurred.

182.   Moreover, such improper conduct was adverse to the interests of Ms. Slaine.

183.    Ms. De Sesto was paid by Ms. Slaine for periods during which Ms. De Sesto was faithless and disloyal to Ms. Slaine, including the periods during which Ms. De Sesto intentionally misrepresenting and overstating Ms. De Sesto's time worked, expenses incurred and amounts owed to Ms. De Sesto by Ms. Slaine with the intent of obtaining payments from Ms. Slaine in excess of amounts owed to Ms. De Sesto without Ms. Slaine's knowledge or consent.

184.    The amounts that Ms. Slaine paid to Ms. De Sesto during the period of Ms. De Sesto's disloyalty are deemed forfeit.

185.    As a result, Ms. Slaine is entitled to disgorgement of all amounts paid to Ms. De Sesto during the period of Ms. De Sesto's disloyalty beginning from the date of Ms. De Sesto's first faithless act, but in no event later than March 5, 2009.

186.    As a result, Ms. Slaine is entitled to disgorgement in an amount to be determined at trial, but not less than $270,000, pre and post judgment interest, punitive damages, and costs, including attorneys' fees.

WHEREFORE, Defendant demands judgment against Plaintiff as follows:

1.      Denying the allegations and claims for relief in Plaintiff's Complaint, dismissing Plaintiff's Complaint and all claims and causes at action therein with prejudice;

2.      Ms. Slaine seeks damages for overpayments in an amount to be determined at trial, but no less than $50,000, plus pre and post judgment interest, punitive damages and costs, including attorneys' fees; and

3.      Ms. Slaine seeks disgorgement of all amounts paid to Ms. De Sesto during the period that Ms. De Sesto was disloyal in an amount to be determined at trial, but no less than $270,000, plus pre and post judgment interest, punitive damages and costs, including attorneys' fees.

4.      For such other relief as the Court may deem just and proper.

Dated: April 1, 2016

MEISTER SEELIG & FEIN LLP

Jeffrey A. Kimmel
Mitchell Schuster
Howard Davis
125 Park Ave., 7th Floor
New York, NY 10017
(212) 655-3500
*Attorneys for Defendant Elyse Slaine*

TO:     *Counsel of Record via ECF*

# **<u>SCHEDULE A</u>**

## <u>SCHEDULE A</u>

## A.  <u>M. DE SESTO PAY ANALYSIS: FEBRUARY – APRIL 2010</u>

| Date | Amount (Actual Pay) | Check # | Daily Pay Rate | Pay Period Noted by MDS on Check | Pay Period Start | Pay Period End | Calen-dar Days | Regular Pay Days | Holi-days (2x pay) | Paid Days | Work Pay[1] | Overpay[2] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/4/2010 | $4,106.08 | 103 | $160 | | 2/1/10 | 2/28/10 | 28 | 20 | - | 20 | $3,200.00 | $906.08 |
| 5/4/2010 | $9,630.55 | 111 & 112 & 113 | $160 | | 3/1/10 | 5/2/10 | 63 | 45 | - | 45 | $7,200.00 | $2,430.55 |

| Check Date | Check # | Check Amount | Actual Weekly Days | Actual Work Days - Mon | Actual Work Days - Tue | Actual Work Days - Wed | Actual Work Days - Thu | Actual Work Days - Fri | Actual Work Days - Sat | Actual Work Days - Sun |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/4/2010 | 103 | $4,106.08 | | | | | | | | |
| | | | 5 | 2/1/2010 | 2/2/2010 | 2/3/2010 | 2/4/2010 | 2/5/2010 | 2/6/2010 | 2/7/2010 |
| | | | 5 | 2/8/2010 | 2/9/2010 | 2/10/2010 | 2/11/2010 | 2/12/2010 | 2/13/2010 | 2/14/2010 |
| | | | 5 | 2/15/2010 | 2/16/2010 | 2/17/2010 | 2/18/2010 | 2/19/2010 | 2/20/2010 | 2/21/2010 |
| | | | 5 | 2/22/2010 | 2/23/2010 | 2/24/2010 | 2/25/2010 | 2/26/2010 | 2/27/2010 | 2/28/2010 |
| | | | 20 | | | | | | | |
| | | | | | | | | | | |
| 5/4/2010 | 111 | $4,000.00 | | | | | | | | |
| 5/4/2010 | 112 | $1,221.55 | | | | | | | | |
| 5/4/2010 | 113 | $4,409.00 | | | | | | | | |
| | | $9,630.55 | | | | | | | | |
| | | | 5 | 3/1/2010 | 3/2/2010 | 3/3/2010 | 3/4/2010 | 3/5/2010 | 3/6/2010 | 3/7/2010 |
| | | | 5 | 3/8/2010 | 3/9/2010 | 3/10/2010 | 3/11/2010 | 3/12/2010 | 3/13/2010 | 3/14/2010 |
| | | | 5 | 3/15/2010 | 3/16/2010 | 3/17/2010 | 3/18/2010 | 3/19/2010 | 3/20/2010 | 3/21/2010 |
| | | | 5 | 3/22/2010 | 3/23/2010 | 3/24/2010 | 3/25/2010 | 3/26/2010 | 3/27/2010 | 3/28/2010 |
| | | | 5 | 3/29/2010 | 3/30/2010 | 3/31/2010 | 4/1/2010 | 4/2/2010 | 4/3/2010 | 4/4/2010 |
| | | | 5 | 4/5/2010 | 4/6/2010 | 4/7/2010 | 4/8/2010 | 4/9/2010 | 4/10/2010 | 4/11/2010 |
| | | | 5 | 4/12/2010 | 4/13/2010 | 4/14/2010 | 4/15/2010 | 4/16/2010 | 4/17/2010 | 4/18/2010 |
| | | | 5 | 4/19/2010 | 4/20/2010 | 4/21/2010 | 4/22/2010 | 4/23/2010 | 4/24/2010 | 4/25/2010 |
| | | | 5 | 4/26/2010 | 4/27/2010 | 4/28/2010 | 4/29/2010 | 4/30/2010 | 5/1/2010 | 5/2/2010 |
| | | | 45 | | | | | | | |

Amount 94,106.08
Account REDACTED
Bank Number: 02100032

Sequence Number 4570165635
Capture Date: 03/11/2010
Check Number 103

ELYSE SLAINE
925 PARK AVE. APT. 9A
NEW YORK, NY 10028

103

3/4/10

1-32/210 NY
00575

Pay to the order of Cash $4,106. 08/100

560011823 04 031010

Four Thousand, one hundred and six Dollars

U.S. TRUST
Bank of America Private Wealth Management
ACH R/T 021000322

Bank of America, N.A.

For

⑆021000322⑆ REDACTED ⑈0103 ⑈0000410608⑈

560011823 02102010 000000005010505666 07 RSN 00

02100089 8812 >021000089<
B00906 CITIBANK, N.
0142 560011823 031010 2012342262

BANK OF AMERICA,NA VRT
011000138 E6115 01 P03
03/11/10
4570165635

Amount:        $4,000|00          Sequence Number: 4670990660
Account:       REDACTED            Capture Date:    05/11/2010
Bank Number: 02100032             Check Number     111

ELYSE SLAINE 5251  04  051010                                    111
925 PARK AVE. APT. 9A                                            1-32/210 NY
NEW YORK, NY 10028                    mg 4/10                     60575
                                              Date

Pay to   cASh                              $ 4,000.°°
         four  thousand                          Dollars

U.S. TRUST                         Bank of America, N.A
Bank of America Private Wealth Management
ACH R/T 021000322

For_____                 Elyse Slaine

⑆0210003 22⑆  REDACTED  ⑆0111  ⑈0000400000⑈

549105251 05102010 0000000050185066 01 KSM 00

        02100089        8612    >021000089<
        B00906                  CITIBANK,NY
        0137  540105251  051010  201242262

            BANK OF AMERICA,NA HRT
            011000139  E2166 01 P03
                          05/10/10
            4670990660

| Amount: | $1,221.55 | Sequence Number | 4670990659 |
|---|---|---|---|
| Account | REDACTED | Capture Date | 05/11/2010 |
| Bank Number | 02100032 | Check Number | 112 |

**ELYSE SLAINE** 5250 04 051010
925 PARK AVE. APT. 9A
NEW YORK, NY 10028

112

1-32/210 NY
60575

May 4/10
Date

Pay to CASH

$ 1,221.55/100

the order of

One thousand, two hundred twenty one dollars

**U.S. TRUST**

Bank of America, N.A.

Bank of America Private Wealth Management
ACH R/T 021000322

For _____

⑆021000322⑆ REDACTED ⑈0112 ⑆00001221 55⑈

Harland Clarke

5491N5250 051V2010 0040008052185966 BY XSN 88

021C0089       8612    >021000089<
B00906                 CITIBANK, NY
0137 540105250 051010 2012422627

BANK OF AMERICA, NA HRT
011000138 E2X64 03 P03
05/11/10

4670990659

| Amount | $4,409 00 | Sequence Number: | 4670990661 |
| Account | REDACTED | Capture Date: | 05/11/2010 |
| Bank Number | 02100032 | Check Number | 113 |

**ELYSE SLAINE** 5254  04  051010
925 PARK AVE. APT. 9A
NEW YORK, NY  10028

113
1-32/210 NY
60575

$m\alpha y$ $4/10$

Pay to _c A S h_ ........................................ $ 4409. XX

$four$ $thousand$ $four$ $hundred$ ; $nine$ ... Dollars

**U.S. TRUST**

Bank of America Private Wealth Management
ACH R/T 021000322                              Bank of America, N.A.

For _____

⑆0 2 1000 3 2 2⑆ REDACTED  ⑈0 1 1 3  ⑇0000440900⑇

Harland Clarke

540105254 05102010 ████████551715282 07 R5N 00

02100089          8612   >021000089<
B00906                    CITIBANK NY
0137 540105254 051010 2012422627

BANK OF AMERICA,NA HRT
011000138 E2166-01 P03
05/11/10
4670990661



## FOUR SEASONS HOTEL
*New York*

### INVOICE

**Ms. Elyse Slaine**                    Date:        04/02/10
**925 Park Avenue**
**Unit 9A**
**New York, NY 10028**

| Description | Amount |
|---|---|
| Room 4403 - Jan 12, 2010<br>Rooms 4407-4408,4410 - Jan 13-Apr 2, 2010 | $338,381.69 |

57 East 57th Street. New York, NY 10022 USA
Telephone 212.758.5700   Fax  212.758.5711  www.fourseasons.com

## B.  M. DE SESTO PAY ANALYSIS: MARCH – MAY 2012

| Date | Amount (Actual Pay) | Check # | Daily Pay Rate | Pay Period Noted by MDS on Check | Pay Period Start | Pay Period End | Calen-dar Days | Regular Pay Days | Holi-days (2x pay) | Paid Days | Work Pay[1] | Overpay[2] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/9/2012 | $4,659.00 | 750 | $170 | Mar/Apr | 3/1/12 | 4/1/12 | 32 | 22 | - | 22 | $3,740.00 | $919.00 |
| 5/9/2012 | $4,659.00 | 882 | $170 | Apr/May | 4/2/12 | 5/4/12 | 33 | 25 | - | 25 | $4,250.00 | $409.00 |
| 6/13/2012 | $3,772.21 | 942 | $170 | | 5/5/12 | 5/31/12 | 27 | 18 | 1 | 19 | $3,400.00 | $372.21 |

| Check Date | Check # | Check Amount | Actual Weekly Days | Actual Work Days - Mon | Actual Work Days - Tue | Actual Work Days - Wed | Actual Work Days - Thu | Actual Work Days - Fri | Actual Work Days - Sat | Actual Work Days - Sun |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/9/2012 | 750 | $4,659.00 | 2 | | | | 3/1/2012 | 3/2/2012 | 3/3/2012 | 3/4/2012 |
| | | | 5 | 3/5/2012 | 3/6/2012 | 3/7/2012 | 3/8/2012 | 3/9/2012 | 3/10/2012 | 3/11/2012 |
| | | | 5 | 3/12/2012 | 3/13/2012 | 3/14/2012 | 3/15/2012 | 3/16/2012 | 3/17/2012 | 3/18/2012 |
| | | | 5 | 3/19/2012 | 3/20/2012 | 3/21/2012 | 3/22/2012 | 3/23/2012 | 3/24/2012 | 3/25/2012 |
| | | | 5 | 3/26/2012 | 3/27/2012 | 3/28/2012 | 3/29/2012 | 3/30/2012 | 3/31/2012 | 4/1/2012 |
| | | | 22 | | | | | | | |
| 5/9/2012 | 882 | $4,659.00 | 5 | 4/2/2012 | 4/3/2012 | 4/4/2012 | 4/5/2012 | 4/6/2012 | 4/7/2012 | 4/8/2012 |
| | | | 5 | 4/9/2012 | 4/10/2012 | 4/11/2012 | 4/12/2012 | 4/13/2012 | 4/14/2012 | 4/15/2012 |
| | | | 5 | 4/16/2012 | 4/17/2012 | 4/18/2012 | 4/19/2012 | 4/20/2012 | 4/21/2012 | 4/22/2012 |
| | | | 5 | 4/23/2012 | 4/24/2012 | 4/25/2012 | 4/26/2012 | 4/27/2012 | 4/28/2012 | 4/29/2012 |
| | | | 5 | 4/30/2012 | 5/1/2012 | 5/2/2012 | 5/3/2012 | 5/4/2012 | | |
| | | | 25 | | | | | | | |
| 6/13/2012 | 942 | $3,772.21 | - | | | | | | 5/5/2012 | 5/6/2012 |
| | | | 5 | 5/7/2012 | 5/8/2012 | 5/9/2012 | 5/10/2012 | 5/11/2012 | 5/12/2012 | 5/13/2012 |
| | | | 5 | 5/14/2012 | 5/15/2012 | 5/16/2012 | 5/17/2012 | 5/18/2012 | 5/19/2012 | 5/20/2012 |
| | | | 7 | 5/21/2012 | 5/22/2012 | 5/23/2012 | 5/24/2012 | 5/25/2012 | 5/26/2012 | 5/27/2012 |
| | | | 2 | 5/28/2012 | 5/29/2012 | 5/30/2012 | 5/31/2012 | | | |
| | | | 19 | | | | | | | |

| Amount | $4,659.00 | Sequence Number | 6392140990 |
| Account | REDACTED | Capture Date | 08/14/2012 |
| Bank Number | 02100032 | Check Number | 750 |

**ELYSE SLAINE**
925 PARK AVE. APT. 9A
NEW YORK, NY 10028

750

1-32/210 NY
60575

5/9/12

Pay to _CASH_                                    $ 4,659.⁰⁰/100

_four thousand six hundred fifty nine_

U.S. TRUST

Bank of America, N.A.

ACH R/T 021000322

_Mercer/ oper. pay_                    Elyse Slaine

⑆021000322⑆ REDACTED ⑈0750

Electronic Endorsements

| Date | Sequence | Bank # | Endra Type | TRN | RRC | Bank Name |
|------|----------|--------|-----------|-----|-----|-----------|
| 08/14/2012 | 006392140990 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 08/14/2012 | 000008300376771 | 21000089 | Rtn Loc/BOFD | Y | | CITIBANK, N A. |



Amount        $4,659 00          Sequence Number   6392140998
Account:      REDACTED           Capture Date      05/14/2012
Bank Number. 02100032           Check Number:      882

**ELYSE SLAINE**                                          882
925 PARK AVE. APT. 9A                                    1-32/210 NY
NEW YORK, NY 10028                                        60575
                                         5 8/12
                                                  Date

Pay to   CASH                              $ 4,659. 00/100
the Order
        four thousand six hundred fifty nine dollars

**U.S. TRUST**                      Bank of America, N.A.

ACH R/T 021000322

For april / may pay              Elyse Slaine

⑈021000322⑈   REDACTED   ⑈0882

For Int Corre

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|-----------|-----|-----|-----------|
| 05/14/2012 | 000008300376953 | 21000089 | Rtn Loc/BOFD | Y | | CITIBANK, N A |
| 05/14/2012 | 006392140998 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |



| Amount. | $3,772 00 | Sequence Number | 6292911277 |
| Account. | REDACTED | Capture Date | 06/13/2012 |
| Bank Number. | 02100032 | Check Number: | 942 |

**ELYSE SLAINE**
925 PARK AVE. APT. 9A
NEW YORK, NY 10028

942

1-32/210 NY
60575

6/13/12

Pay to  CASH

$ 3,772. ⁰⁰/₁₀₀

Three thousand, seven hundred seventy two

U.S. TRUST

Bank of America, N A

ACH R/T 021000322

⑈021000322⑈ REDACTED ⑈0942⑈

Harland Clarke

Electronic Endorsements·

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
| 06/13/2012 | 000008300272809 | 21000089 | Rtn Loc/BOFD | Y | | CITIBANK, N.A. |
| 06/13/2012 | 006292911277 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |

## C.  M. DE SESTO PAY ANALYSIS: MAY – AUGUST 2013

| Date | Amount (Actual Pay) | Check # | Daily Pay Rate | Pay Period Noted by MDS on Check | Pay Period Start | Pay Period End | Calendar Days | Regular Pay Days | Holidays (2x pay) | Paid Days | Work Pay[1] | Overpay[2] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/9/2013 | $10,688.99 | 1329 | $170 | May/Jun | 5/1/13 | 6/30/13 | 61 | 39 | - | 39 | $6,630.00 | $4,058.99 |
| 9/20/2013 | $4,304.44 | 1351 | $170 | | 7/1/13 | 7/31/13 | 31 | 20 | 1 | 21 | $3,740.00 | $564.44 |
| 9/20/2013 | $4,880.00 | 1352 | $170 | | 8/1/13 | 8/31/13 | 31 | 23 | - | 23 | $3,910.00 | $970.00 |

| Check Date | Check # | Check Amount | Actual Weekly Days | Actual Work Days Mon | Actual Work Days Tue | Actual Work Days Wed | Actual Work Days Thu | Actual Work Days Fri | Actual Work Days Sat | Actual Work Days Sun |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/9/2013 | 1329 | $10,688.99 | | | | | | | | |
| | | | 3 | | | 5/1/2013 | 5/2/2013 | 5/3/2013 | 5/4/2013 | 5/5/2013 |
| | | | 5 | 5/6/2013 | 5/7/2013 | 5/8/2013 | 5/9/2013 | 5/10/2013 | 5/11/2013 | 5/12/2013 |
| | | | 5 | 5/13/2013 | 5/14/2013 | 5/15/2013 | 5/16/2013 | 5/17/2013 | 5/18/2013 | 5/19/2013 |
| | | | 4 | 5/20/2013 | 5/21/2013 | 5/22/2013 | 5/23/2013 | 5/24/2013 | 5/25/2013 | 5/26/2013 |
| | | | 5 | 5/27/2013 | 5/28/2013 | 5/29/2013 | 5/30/2013 | 5/31/2013 | 6/1/2013 | 6/2/2013 |
| | | | 5 | 6/3/2013 | 6/4/2013 | 6/5/2013 | 6/6/2013 | 6/7/2013 | 6/8/2013 | 6/9/2013 |
| | | | 2 | 6/10/2013 | 6/11/2013 | 6/12/2013 | 6/13/2013 | 6/14/2013 | 6/15/2013 | 6/16/2013 |
| | | | 5 | 6/17/2013 | 6/18/2013 | 6/19/2013 | 6/20/2013 | 6/21/2013 | 6/22/2013 | 6/23/2013 |
| | | | 5 | 6/24/2013 | 6/25/2013 | 6/26/2013 | 6/27/2013 | 6/28/2013 | 6/29/2013 | 6/30/2013 |
| | | | 39 | | | | | | | |
| 9/20/2013 | 1351 | $4,304.44 | | | | | | | | |
| | | | 5 | 7/1/2013 | 7/2/2013 | 7/3/2013 | 7/4/2013 | 7/5/2013 | 7/6/2013 | 7/7/2013 |
| | | | 5 | 7/8/2013 | 7/9/2013 | 7/10/2013 | 7/11/2013 | 7/12/2013 | 7/13/2013 | 7/14/2013 |
| | | | 5 | 7/15/2013 | 7/16/2013 | 7/17/2013 | 7/18/2013 | 7/19/2013 | 7/20/2013 | 7/21/2013 |
| | | | 5 | 7/22/2013 | 7/23/2013 | 7/24/2013 | 7/25/2013 | 7/26/2013 | 7/27/2013 | 7/28/2013 |
| | | | 1 | 7/29/2013 | 7/30/2013 | 7/31/2013 | | | | |
| | | | 21 | | | | | | | |
| 9/20/2013 | 1352 | $4,880.00 | | | | | | | | |
| | | | 4 | | | | 8/1/2013 | 8/2/2013 | 8/3/2013 | 8/4/2013 |
| | | | 5 | 8/5/2013 | 8/6/2013 | 8/7/2013 | 8/8/2013 | 8/9/2013 | 8/10/2013 | 8/11/2013 |
| | | | 5 | 8/12/2013 | 8/13/2013 | 8/14/2013 | 8/15/2013 | 8/16/2013 | 8/17/2013 | 8/18/2013 |
| | | | 5 | 8/19/2013 | 8/20/2013 | 8/21/2013 | 8/22/2013 | 8/23/2013 | 8/24/2013 | 8/25/2013 |
| | | | 4 | 8/26/2013 | 8/27/2013 | 8/28/2013 | 8/29/2013 | 8/30/2013 | 8/31/2013 | |
| | | | 23 | | | | | | | |

| Amount | $10,688.99 | Sequence Number: 6392007325 |
|---|---|---|
| Account | REDACTED | Capture Date: 07/19/2013 |
| Bank Number | 02100032 | Check Number | 1329 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1329
T-32/210 NY
50575

7/9/13

Pay to the order of CASh                    $ 10,688.99

Ten Thousand six hundred eighty eight ———— Dollars

**U.S. TRUST**

Bank of America, N.A.

ACH R/T 021000322

fr. chu / May & June                    Elyse Slaine

⑆021000322⑆ REDACTED ⑈1329

For/Find Clorio

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|---|---|---|---|---|---|---|
| 07/18/2013 | 000008300640320 | 21000089 | Rtn Loc/BOFD | 7 | | CITIBANK, N.A. |
| 07/19/2013 | 006392007325 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |

| Amount: | $4,304.44 | Sequence Number: 7092442485 |
| Account: | REDACTED | Capture Date: 09/20/2013 |
| Bank Number: 02100032 | | Check Number: 1351 |

**ELYSE SLAINE**
925 PARK AVE APT 8A
NEW YORK NY 10028-0210

1351
1-32/210 NY
60575

9/20/13

Pay to CASH
the order of

$ 4,304.44/100

four thousand, three hundred ———— Dollars

U.S. TRUST

Bank of America, N.A.

ACH R/T 021000032

For _____

Elyse Slaine

⑆021000322⑆ REDACTED ⑈1351

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | BHC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| 09/20/2013 | 000008300079694 | 21000089 | Rtn Loc/BOFD | T | | CITIBANK, N A |
| 09/20/2013 | 007092442485 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NE |

| Amount · | $4,880.00 | Sequence Number: 7092442905 |
| Account . | REDACTED | Capture Date:   09/20/2013 |
| Bank Number: 02100032 | | Check Number:    1352 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1352

1-32/210 NY
60575

9/20/13

Pay to  CASH

$ 4,880.00

Four thousand eight hundred, eighty  Dollars

**U.S. TRUST**

Bank of America, N.A.

ACH R/T 021000322

For

Elyse Slaine

⑉021000322⑉ REDACTED ⑈1352

Harland Clarke

Electronic Endorsements·

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|---|---|---|---|---|---|---|
| 09/20/2013 | 007092442905 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 09/20/2013 | 000008300005129 | 21000089 | Rtn Loc/BOFD | Y | | CITIBANK, N.A. |

## L. KAHN PAY ANALYSIS - SUMMARY

| Check Date | Check Amount | Check Processing Date | Check # | Daily Pay | Paid Days | Pay Period Start | Pay Period End | Work Pay | Exp-enses |
|---|---|---|---|---|---|---|---|---|---|
| 5/4/2013 | $720.00 | 5/6/2013 | 990 | $180 | 4 | 5/3/2013 | 5/9/2013 | 720.00 | $0.00 |
| 5/14/2013 | $750.00 | 5/21/2013 | 998 | $180 | 4 | 5/10/2013 | 5/16/2013 | 720.00 | $30.00 |
| 5/21/2013 | $720.00 | 5/21/2013 | 1313 | $180 | 4 | 5/17/2013 | 5/23/2013 | 720.00 | $0.00 |
| 6/5/2013 | $1,800.00 | 6/5/2013 | 1317 | $180 | 10 | 5/24/2013 | 6/6/2013 | 1,800.00 | $0.00 |
| 6/13/2013 | $900.00 | 6/13/2013 | 1318 | $180 | 5 | 6/7/2013 | 6/13/2013 | 900.00 | $0.00 |
| 6/17/2013 | $1,080.00 | 6/17/2013 | 1323 | $180 | 6 | 6/14/2013 | 6/20/2013 | 1,080.00 | $0.00 |
| 7/3/2013 | $1,980.00 | 7/5/2013 | 1326 | $180 | 11 | 6/21/2013 | 7/4/2013 | 1,980.00 | $0.00 |
| 7/17/2013 | $1,842.00 | 7/17/2013 | 1330 | $180 | 10 | 7/5/2013 | 7/18/2013 | 1,800.00 | $42.00 |
| 7/24/2013 | $900.00 | 7/24/2013 | 1332 | $180 | 5 | 7/19/2013 | 7/25/2013 | 900.00 | $0.00 |
| 7/31/2013 | $900.00 | 7/31/2013 | 1335 | $180 | 5 | 7/26/2013 | 8/1/2013 | 900.00 | $0.00 |
| 8/6/2013 | $900.00 | 8/7/2013 | 1340 | $180 | 5 | 8/2/2013 | 8/8/2013 | 900.00 | $0.00 |
| 9/14/2013 | $900.00 | 8/16/2013 | 1342 | $180 | 5 | 8/9/2013 | 8/15/2013 | 900.00 | $0.00 |
| 8/21/2013 | $900.00 | 8/21/2013 | 1343 | $180 | 5 | 8/16/2013 | 8/22/2013 | 900.00 | $0.00 |
| 8/27/2013 | $945.00 | 8/27/2013 | 1344 | $180 | 5 | 8/23/2013 | 8/29/2013 | 900.00 | $45.00 |
| 9/2/2013 | $765.00 | 9/3/2013 | 1346 | $180 | 4 | 8/30/2013 | 9/5/2013 | 720.00 | $45.00 |

## L. KAHN PAY ANALYSIS

| Check Date | Check # | Check Amount | Check Comment | Check Processing Date | Paid Weekly Days | Actual Work Days - Fri | Actual Work Days - Sat | Actual Work Days - Sun | Actual Work Days - Mon | Actual Work Days - Tue | Actual Work Days - Wed | Actual Work Days - Thu |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/4/2013 | 990 | $720.00 | | 5/6/2013 | | | | | | | | |
| | | | | | 4 | 5/3/2013 | 5/4/2013 | 5/5/2013 | 5/6/2013 | 5/7/2013 | 5/8/2013 | 5/9/2013 |
| 5/14/2013 | 998 | $750.00 | | 5/21/2013 | | | | | | | | |
| | | | | | 4 | 5/10/2013 | 5/11/2013 | 5/12/2013 | 5/13/2013 | 5/14/2013 | 5/15/2013 | 5/16/2013 |
| 5/21/2013 | 1313 | $720.00 | | 5/21/2013 | | | | | | | | |
| | | | | | 4 | 5/17/2013 | 5/18/2013 | 5/19/2013 | 5/20/2013 | 5/21/2013 | 5/22/2013 | 5/23/2013 |
| 6/5/2013 | 1317 | $1,800.00 | | 6/5/2013 | | | | | | | | |
| | | | | | 5 | 5/24/2013 | 5/25/2013 | 5/26/2013 | 5/27/2013 | 5/28/2013 | 5/29/2013 | 5/30/2013 |
| | | | | | 5 | 5/31/2013 | 6/1/2013 | 6/2/2013 | 6/3/2013 | 6/4/2013 | 6/5/2013 | 6/6/2013 |
| 6/13/2013 | 1318 | $900.00 | | 6/13/2013 | | | | | | | | |
| | | | | | 5 | 6/7/2013 | 6/8/2013 | 6/9/2013 | 6/10/2013 | 6/11/2013 | 6/12/2013 | 6/13/2013 |
| 6/17/2013 | 1323 | $1,080.00 | | 6/17/2013 | | | | | | | | |
| | | | | | 6 | 6/14/2013 | 6/15/2013 | 6/16/2013 | 6/17/2013 | 6/18/2013 | 6/19/2013 | 6/20/2013 |
| 7/3/2013 | 1326 | $1,980.00 | | 7/5/2013 | | | | | | | | |
| | | | | | 5 | 6/21/2013 | 6/22/2013 | 6/23/2013 | 6/24/2013 | 6/25/2013 | 6/26/2013 | 6/27/2013 |
| | | | | | 6 | 6/28/2013 | 6/29/2013 | 6/30/2013 | 7/1/2013 | 7/2/2013 | 7/3/2013 | 7/4/2013 |
| 7/17/2013 | 1330 | $1,842.00 | Jul 5-7 + Jul 10-16 | 7/17/2013 | | | | | | | | |
| | | | | | 5 | 7/5/2013 | 7/6/2013 | 7/7/2013 | 7/8/2013 | 7/9/2013 | 7/10/2013 | 7/11/2013 |
| | | | | | 5 | 7/12/2013 | 7/13/2013 | 7/14/2013 | 7/15/2013 | 7/16/2013 | 7/17/2013 | 7/18/2013 |
| 7/24/2013 | 1332 | $900.00 | Jul 19-23 | 7/24/2013 | | | | | | | | |
| | | | | | 5 | 7/19/2013 | 7/20/2013 | 7/21/2013 | 7/22/2013 | 7/23/2013 | 7/24/2013 | 7/25/2013 |
| 7/31/2013 | 1335 | $900.00 | Jul 26-30 | 7/31/2013 | | | | | | | | |
| | | | | | 5 | 7/26/2013 | 7/27/2013 | 7/28/2013 | 7/29/2013 | 7/30/2013 | 7/31/2013 | 8/1/2013 |
| 8/6/2013 | 1340 | $900.00 | Aug 2-6 | 8/7/2013 | | | | | | | | |
| | | | | | 5 | 8/2/2013 | 8/3/2013 | 8/4/2013 | 8/5/2013 | 8/6/2013 | 8/7/2013 | 8/8/2013 |
| 9/14/2013 | 1342 | $900.00 | Aug 9-13 | 8/16/2013 | | | | | | | | |
| | | | | | 5 | 8/9/2013 | 8/10/2013 | 8/11/2013 | 8/12/2013 | 8/13/2013 | 8/14/2013 | 8/15/2013 |
| 8/21/2013 | 1343 | $900.00 | Aug 16-20 | 8/21/2013 | | | | | | | | |
| | | | | | 5 | 8/16/2013 | 8/17/2013 | 8/18/2013 | 8/19/2013 | 8/20/2013 | 8/21/2013 | 8/22/2013 |
| 8/27/2013 | 1344 | $945.00 | Aug 23-26 | 8/27/2013 | | | | | | | | |
| | | | | | 5 | 8/23/2013 | 8/24/2013 | 8/25/2013 | 8/26/2013 | 8/27/2013 | 8/28/2013 | 8/29/2013 |
| 9/2/2013 | 1346 | $765.00 | Aug 30 - Sep 02 | 9/3/2013 | | | | | | | | |
| | | | | | 4 | 8/30/2013 | 8/31/2013 | 9/1/2013 | 9/2/2013 | 9/3/2013 | 9/4/2013 | 9/5/2013 |



| Amount | $720.00 | Sequence Number | 9592128665 |
| Account: | REDACTED | Capture Date. | 05/06/2013 |
| Bank Number: 02100033 | | Check Number. | 990 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

0990
1-32/210 NY
50575

5/4/13

Pay to  CASH                                    $ 720. **

Seven hundred, twenty                          Dollars

U.S. TRUST

ACH R/T 021000322

⑆021000322⑆ REDACTED ⑈0990

**Electronic Endorsements.**

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| 05/06/2013 | 4590790136 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK, |
| 05/06/2013 | 009592128665 | 111013822 | Pay Bank | N | | BANK OF AMERICA, NA |



| Amount | $750 00 | Sequence Number: | 8793248277 |
| Account. | REDACTED | Capture Date | 05/21/2011 |
| Bank Number | 02100032 | Check Number | 998 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

0998
1-32/210 NY
50575

May 14/13

Pay to CASh

$ 750. 00/100

seven hundred, fifty dollars

U.S. TRUST

ACH R/T 021000322

:021000322: REDACTED 0998

JPMorgan Chase Bank

**Electronic Endorsements**

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
| --- | --- | --- | --- | --- | --- | --- |
| 05/21/2013 | 9290391915 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK |
| 05/21/2013 | 008792248277 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA. |



| Amount: | $720.00 | Sequence Number | 8792248276 |
| Account | REDACTED | Capture Date | 05/31/2013 |
| Bank Number | 02100032 | Check Number | 1313 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1313
1-32/210 NY
60575

5/21/13

Pay to CASH                                    | $ 720.00/100

the order of Seven hundred Twenty dollars

U.S. TRUST

Bank of America, N.A.

ACH R/T 021000032

⑆021000322⑆ REDACTED ⑈1313

JP Morgan Chase Bank GFL 100 00J003 02159000 10213

**Electronic Endorsements**

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
| --- | --- | --- | --- | --- | --- | --- |
| 05/31/2013 | 008792248276 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 05/31/2013 | 9290391514 | 74909962 | Btn Loc/BOFD | Y | | JPMORGAN CHASE BANK |



Amount:        $1,800.00          Sequence Number   8992288084
Account        REDACTED           Capture Date      06/05/2013
Bank Number   02100032           Check Number:     1317

**ELYSE SLAINE**                                                    **1317**
925 PARK AVE APT 9A                                          1-32/210 NY
NEW YORK NY 10028-0210                          6/5/13         00575

Pay to   CASH                                    $ 1,800. XX
         One thousand, eight hundred ——————— Dollars

**U.S. TRUST**                   Bank of America, N.A.

ACH R/T 021000322

⑆021000322⑆  REDACTED  ⑈1317

one silent seceble & del 130-00000 1LT dollars

Electronic Endorsements
Date         Sequence        Bank #       Endrs Type    TEN    RRC    Bank Name
06/05/2013   9870986225      74909962     Rtn Loc/BOFD  Y             JPMORGAN CHASE BANK,
06/05/2013   008992288084    111012822    Pay Bank      N             BANK OF AMERICA, NA

| Amount | $900.00 | Sequence Number | 9292659402 |
|---|---|---|---|
| Account | REDACTED | Capture Date | 06/13/2013 |
| Bank Number | 02100032 | Check Number: | 1318 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1318

I-32/210 NY
60575

6/13/13

Pay to CASh

$ 900. 84/100

Nine hundred

Dollars

U.S. TRUST

Bank of America, N.A

ACH R/T 021000322

|:021000322|: REDACTED 1318

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|---|---|---|---|---|---|---|
| 06/13/2013 | 009292859402 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 06/13/2013 | 9890450382 | 74903562 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK |



Amount        $1,080.00       Sequence Number  9892715019
Account,      REDACTED        Capture Date     06/17/2013
Bank Number   02100032        Check Number:    1323

**ELYSE SLAINE**
825 PARK AVE APT 9A
NEW YORK NY 10028-0210

6/17/13

Pay to   CASH                                    $ 1,080.
One thousand, eighty dollars

**U.S. TRUST**                         Bank of America, N.A

ACH R/T 021000322

Elyse Slaine

⑆021000322⑆ REDACTED  ⑈1323

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| 06/17/2013 | 2070413703 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK |
| 06/17/2013 | 009892715019 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |



| Amount: | $1,980.00 | Sequence Number: | 9592012877 |
| Account: | REDACTED | Capture Date | 07/05/2011 |
| Bank Number | 02100032 | Check Number: | 1326 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1326
1-32/210 NY
60675

7/3/13

Pay to CASh ............................................ $1,980. xx

One thousand, nine hundred eighty — Dollars

U.S. TRUST
Bank of America, N.A.

ACH R/T 021000322

For _____ Elyse Slaine

⑆021000322⑆ REDACTED ⑈1326

Harland Clarke

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|---|---|---|---|---|---|---|
| 07/05/2013 | 009592012877 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 07/05/2013 | 9070301828 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK, |



Amount:      $1,842.00        Sequence Number: 9392056801
Account:     REDACTED         Capture Date:    07/17/2013
Bank Number: 02100032         Check Number:    1330

**ELYSE SLAINE**                                                    1330
925 PARK AVE APT 9A                                              1-32/210 NY
NEW YORK NY 10028-0210                                              50575

                                              7/17/13

Pay to  CASh                                            $ 1,842.88
the order of  One thousand, eight hundred, forty two...

U.S. TRUST                        Bank of America, N.A.

ACH R/T 021000322      Jul 5-7  Jitney
                Long   Jul 10-16  Taxi

⑆021000322⑆ REDACTED ⑈1330

Electronic Endorsements

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|---|---|---|---|---|---|---|
| 07/17/2013 | 009392056801 | 111013822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 07/17/2013 | 5670499975 | 74909862 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK, |

| Amount | $500 00 | Sequence Number | 9292236925 |
| Account | REDACTED | Capture Date | 07/24/2013 |
| Bank Number | 02100032 | Check Number | 1332 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1332
1-32/210 NY
60375

$7/24/13$   Date

Pay to CASh
the order of

Nine hundred

$ 900.xx/100

Dollars

U.S. TRUST

Bank of America, N.A.

ACH R/T 021000322

For Lorie July 19 - 23

Elyse Sla

⑆021000322⑆ REDACTED ⑈1332

Humid Claus

ED

Electronic Endorsements

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|-----------|-----|-----|-----------|
| 07/24/2013 | 4790378842 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK, |
| 07/24/2013 | 009292236925 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |





| Amount: | $900.00 | Sequence Number | 8992274508 |
| Account | REDACTED | Capture Date | 08/07/2013 |
| Bank Number | 02100032 | Check Number | 1340 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1340
1-32/210 NY
60575

8/6/13

Pay to CAsh ................................................ $ 900. xx/100

the order of

nine hundred  dollars ——————— Dollars

U.S. TRUST  Bank of America, N.A.

ACH R/T 021000322

R/ Lorie Aug 2 - 6

⑆021000322⑆ REDACTED ⑈1340

JP Morgan Chase Bank 080712 000599 022540071218

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
| 08/07/2013 | 008992274508 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 08/07/2013 | 9870526256 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK |



Amount          $900 00        Sequence Number   0792731194
Account         REDACTED       Capture Date      08/16/2013
Bank Number     02100032       Check Number      1342

**ELYSE SLAINE**                                                    1342
925 PARK AVE APT 9A                                                 1-32/210 NY
NEW YORK NY 10028-0210                          9/14/13             60075
                                                        Date

Pay to  CASH                                      $  900. XX/100
the order of
        nine hundred dollars                            Dollars

U.S. TRUST                                 Bank of America, N.A.

ACH R/T 021000322     13
For  Lorie  Aug · 9 - 09, 20              Elyse Sla

⑆021000322⑆ REDACTED ⑈1342

Electronic Endorsements:
Date       Sequence        Bank #      Endrs Type    TRN   RRC   Bank Name
08/16/2013 9070169736      74909962    Rtn Loc/BOFD  Y           JPMORGAN CHASE BANK,
08/16/2013 008792731194    111013822   Pay Bank      N           BANK OF AMERICA, NA



| Amount: | $900.00 | Sequence Number: | 8992445792 |
| Account: | REDACTED | Capture Date | 08/21/2013 |
| Bank Number | 02100032 | Check Number: | 1343 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1343
1-32/210 NY
60575

8/21/13

Pay to  CASH

$ 900 00/100

nine hundred

Dollars

**U.S. TRUST**

Bank of America, N.A.

ACH R/T 021000322

For Lorie Aug 16 - 20

Elyse Slaine

⑆021000322⑆ REDACTED ⑈1343

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | REC | Bank Name |
| --- | --- | --- | --- | --- | --- | --- |
| 08/21/2013 | 9490760187 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK, |
| 08/21/2013 | 008992445792 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |



Amount         $945.00                Sequence Number: 9292823703
Account        REDACTED               Capture Date     08/27/2013
Bank Number    02100032               Check Number     1344

**ELYSE SLAINE**
926 PARK AVE APT 9A
NEW YORK NY 10028-0210                                          1344
                                                               1-32/210 NY
                                                               60525

8/27/13

Pay to __CASH__                          $ 945.__45/100__
the order of

nine hundred forty five                  Dollars

U.S. TRUST                  Bank of America, N.A.

ACH R/T 021000322

For  Aug · 23 - 27                       Elyse Slaine

⑆021000322⑆ REDACTED ⑈1344

Electronic Endorsements

| Date | Sequence | Bank # | Endr's Type | TRN | SRC | Bank Name |
|------|----------|--------|-------------|-----|-----|-----------|
| 08/27/2013 | 009292823703 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 08/27/2013 | 9870326245 | 74909963 | Rtn Doc/BOFD | Y | | JPMORGAN CHASE BANK. |

| Amount · | $765.00 | Sequence Number: | 8792103684 |
| Account: | REDACTED | Capture Date: | 09/03/2013 |
| Bank Number: 02100032 | | Check Number: | 1346 |

**ELYSE SLAINE**
925 PARK AVE APT 9A
NEW YORK NY 10028-0210

1346
1-32/210 NY
50575

9/2/13

Pay to
the order of  CASH                    $ 765. 00/100

Seven hundred, sixty five dollars ———— Dollars

U.S. TRUST

Bank of America, N.A.

ACH R/T 021000322

For: Aug. 30 - Sept. 02          Elyse Sl...                    AP

⑆021000322⑈ REDACTED ⑈1346

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| 09/03/2013 | 3680683029 | 74909962 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK, |
| 09/03/2013 | 008792103684 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |

# **<u>SCHEDULE B</u>**

**SCHEDULE B**

## DE SESTO PAY ANALYSIS - SUMMARY

| Date | Amount (Actual Pay) | Check # | Daily Pay Rate | Pay Period Noted by MDS on Check | Pay Period Start | Pay Period End | Calendar Days | Regular Pay Days | Holidays (2x pay) | Paid Days | Work Pay[1] | Overpay[2] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/5/2009 | $3,694.58 | 458 & 459 | $160 | | 2/2/09 | 3/1/09 | 28 | 20 | - | 20 | $3,200.00 | $494.58 |
| 5/8/2009 | $4,350.54 | 504 & 505 | $160 | | 3/30/09 | 4/30/09 | 32 | 24 | - | 24 | $3,840.00 | $510.54 |
| 6/5/2009 | $3,849.63 | 803 | $160 | | 5/1/09 | 5/31/09 | 31 | 16 | - | 16 | $2,560.00 | $1,289.63 |
| 7/12/2009 | $4,270.16 | 809 & 810 & 815 | $160 | | 6/1/09 | 6/30/09 | 30 | 22 | - | 22 | $3,520.00 | $750.16 |
| 9/11/2009 | $4,894.46 | 538 | $160 | | 8/3/09 | 8/31/09 | 29 | 21 | - | 21 | $3,360.00 | $1,534.46 |
| 10/16/2009 | $4,112.84 | 562 | $160 | | 9/1/09 | 9/30/09 | 30 | 21 | 1 | 22 | $3,680.00 | $432.84 |
| 11/3/2009 | $4,522.26 | 550 | $160 | | 10/1/09 | 11/1/09 | 32 | 22 | - | 22 | $3,520.00 | $1,002.26 |
| 12/9/2009 | $4,286.45 | 579 | $160 | | 11/2/09 | 11/30/09 | 29 | 21 | - | 21 | $3,360.00 | $926.45 |
| 1/18/2010 | $5,085.00 | 525 | $160 | | 12/1/09 | 12/31/09 | 31 | 23 | - | 23 | $3,680.00 | $1,405.00 |
| 2/12/2010 | $4,445.59 | 560 | $160 | | 1/1/10 | 1/31/10 | 31 | 20 | 1 | 21 | $3,520.00 | $925.59 |
| 3/4/2010 | $4,106.08 | 103 | $160 | | 2/1/10 | 2/28/10 | 28 | 20 | - | 20 | $3,200.00 | $906.08 |
| 5/4/2010 | $9,630.55 | 111 & 112 & 113 | $160 | | 3/1/10 | 5/2/10 | 63 | 45 | - | 45 | $7,200.00 | $2,430.55 |
| 6/12/2010 | $4,985.74 | 135 & 136 | $160 | | 5/3/10 | 5/31/10 | 29 | 20 | 1 | 21 | $3,520.00 | $1,465.74 |
| 7/15/2010 | $4,577.72 | 508 | $170 | | 6/1/10 | 6/30/10 | 30 | 20 | - | 20 | $3,400.00 | $1,177.72 |
| 8/17/2010 | $4,373.20 | 524 | $170 | | 7/1/10 | 8/1/10 | 32 | 24 | - | 24 | $4,080.00 | $293.20 |
| 9/20/2010 | $4,418.38 | 272 | $170 | | 8/2/10 | 8/31/10 | 30 | 20 | - | 20 | $3,400.00 | $1,018.38 |
| 10/14/2010 | $4,318.69 | 529 | $170 | | 9/1/10 | 9/30/10 | 30 | 21 | 1 | 22 | $3,910.00 | $408.69 |
| 11/19/2010 | $4,232.16 | 536 | $170 | | 10/1/10 | 10/28/10 | 28 | 20 | - | 20 | $3,400.00 | $832.16 |
| 12/13/2010 | $1,200.00 | 577 | $170 | | 10/29/10 | 11/2/10 | 5 | 3 | - | 3 | $510.00 | $690.00 |
| 12/16/2010 | $4,279.28 | 603 | $170 | | 11/3/10 | 11/30/10 | 28 | 20 | - | 20 | $3,400.00 | $879.28 |
| 1/21/2011 | $4,272.83 | 284 | $170 | | 12/1/10 | 1/2/11 | 33 | 18 | - | 18 | $3,060.00 | $1,212.83 |
| 2/18/2011 | $4,170.16 | 570 | $170 | | 1/3/11 | 1/30/11 | 28 | 20 | - | 20 | $3,400.00 | $770.16 |
| 3/16/2011 | $1,650.00 | 631 | $170 | | 1/31/11 | 2/6/11 | 7 | 5 | - | 5 | $850.00 | $800.00 |
| 3/18/2011 | $4,056.00 | 633 | $170 | | 2/7/11 | 3/6/11 | 28 | 20 | - | 20 | $3,400.00 | $656.00 |
| 4/15/2011 | $4,120.00 | 290 | $170 | | 3/7/11 | 4/3/11 | 28 | 20 | - | 20 | $3,400.00 | $720.00 |
| 5/10/2011 | $3,738.39 | 642 | $170 | | 4/4/11 | 4/24/11 | 21 | 15 | - | 15 | $2,550.00 | $1,188.39 |
| 6/15/2011 | $4,154.56 | 582 | $170 | | 4/25/11 | 5/22/11 | 28 | 20 | - | 20 | $3,400.00 | $754.56 |
| 7/21/2011 | $5,183.40 | 688 | $170 | | 5/23/11 | 6/30/11 | 39 | 28 | - | 28 | $4,760.00 | $423.40 |
| 8/19/2011 | $5,368.00 | 587 | $170 | | 7/1/11 | 7/31/11 | 31 | 22 | 1 | 23 | $4,080.00 | $1,288.00 |
| 9/21/2011 | $5,047.61 | 801 | $170 | | 8/1/11 | 8/31/11 | 31 | 21 | - | 21 | $3,570.00 | $1,477.61 |
| 10/20/2011 | $4,920.20 | 827 | $170 | Sep | 9/1/11 | 10/2/11 | 32 | 21 | 1 | 22 | $3,910.00 | $1,010.20 |
| 11/17/2011 | $3,618.45 | 833 | $170 | | 10/3/11 | 10/31/11 | 29 | 21 | - | 21 | $3,570.00 | $48.45 |
| 12/15/2011 | $4,194.04 | 842 | $170 | | 11/1/11 | 11/30/11 | 30 | 21 | 1 | 22 | $3,910.00 | $284.04 |
| 1/7/2012 | $3,831.00 | 862 | $170 | Dec | 12/1/11 | 1/1/12 | 32 | 17 | - | 17 | $2,890.00 | $941.00 |
| 2/17/2012 | $3,849.73 | 718 | $170 | | 1/2/12 | 1/31/12 | 30 | 22 | - | 22 | $3,740.00 | $109.73 |
| 3/16/2012 | $3,667.69 | 736 | $170 | | 2/1/12 | 2/29/12 | 29 | 21 | - | 21 | $3,570.00 | $97.69 |
| 5/9/2012 | $4,659.00 | 750 | $170 | Mar/Apr | 3/1/12 | 4/1/12 | 32 | 22 | - | 22 | $3,740.00 | $919.00 |
| 5/9/2012 | $4,659.00 | 882 | $170 | Apr/May | 4/2/12 | 5/4/12 | 33 | 25 | - | 25 | $4,250.00 | $409.00 |
| 6/13/2012 | $3,772.21 | 942 | $170 | | 5/5/12 | 5/31/12 | 27 | 18 | 1 | 19 | $3,400.00 | $372.21 |
| 8/12/2012 | $4,210.00 | 916 | $170 | Jun/Jul | 6/1/12 | 6/30/12 | 30 | 19 | - | 19 | $3,230.00 | $980.00 |
| 8/12/2012 | $4,221.55 | 915 | $170 | Jun/Jul | 7/1/12 | 7/29/12 | 29 | 21 | - | 21 | $3,570.00 | $651.55 |
| 9/13/2012 | $4,111.79 | 782 | $170 | | 7/30/12 | 8/26/12 | 28 | 19 | - | 19 | $3,230.00 | $881.79 |
| 11/22/2012 | $9,325.89 | 759 | $170 | Sep/Oct | 8/27/12 | 10/31/12 | 66 | 46 | - | 46 | $7,820.00 | $1,505.89 |
| 1/18/2013 | $9,752.07 | 956 | $170 | | 11/1/12 | 12/31/12 | 61 | 38 | 1 | 39 | $6,800.00 | $2,952.07 |
| 2/14/2013 | $4,981.97 | 968 | $170 | | 1/1/13 | 1/31/13 | 31 | 22 | 1 | 23 | $4,080.00 | $901.97 |
| 3/23/2013 | $4,824.95 | 977 | $170 | | 2/1/13 | 2/28/13 | 28 | 20 | - | 20 | $3,400.00 | $1,424.95 |
| 5/1/2013 | $4,235.49 | 988 | $170 | | 3/1/13 | 3/31/13 | 31 | 21 | - | 21 | $3,570.00 | $665.49 |
| 5/13/2013 | $5,200.00 | 995 | $170 | | 4/1/13 | 4/30/13 | 30 | 22 | - | 22 | $3,740.00 | $1,460.00 |
| 7/9/2013 | $10,688.99 | 1329 | $170 | May/Jun | 5/1/13 | 6/30/13 | 61 | 39 | - | 39 | $6,630.00 | $4,058.99 |
| 9/20/2013 | $4,304.44 | 1351 | $170 | | 7/1/13 | 7/31/13 | 31 | 20 | 1 | 21 | $3,740.00 | $564.44 |
| 9/20/2013 | $4,880.00 | 1352 | $170 | | 8/1/13 | 8/31/13 | 31 | 23 | - | 23 | $3,910.00 | $970.00 |
| 11/28/2013 | $8,000.00 | 1382 | $180 | Sep/Oct | 9/1/13 | 10/31/13 | 61 | 41 | - | 41 | $7,380.00 | $620.00 |
| 12/6/2013 | $5,474.00 | 1386 | $180 | | 11/1/13 | 12/1/13 | 31 | 17 | 1 | 18 | $3,420.00 | $2,054.00 |
| 1/10/2014 | $4,659.36 | 1400 | $180 | | 12/2/13 | 12/31/13 | 30 | 21 | 1 | 22 | $4,140.00 | $519.36 |
| 1/31/2014 | $4,200.00 | 1409 | $180/200 | | 1/1/14 | 2/2/14 | 33 | 20 | 1 | 21 | $4,120.00 | $80.00 |
| 3/14/2014 | $3,615.00 | 1427 | $200 | | 2/3/14 | 3/6/14 | 32 | 17 | - | 17 | $3,400.00 | $215.00 |
| 4/26/2014 | $3,471.87 | 1017 | $200 | | 3/7/14 | 4/6/14 | 31 | 17 | - | 17 | $3,400.00 | $71.87 |
| 4/16/2014 | $650.00 | 1013 | $200 | | 4/7/14 | 4/10/14 | 4 | 3 | - | 3 | $600.00 | $50.00 |
| 5/30/2014 | $4,000.00 | 1024 | $200 | April | 4/11/14 | 5/16/14 | 36 | 18 | - | 18 | $3,600.00 | $400.00 |
| | **$273,372.95** | | | | | | **1,869** | **1,264** | **14** | **1,278** | **$219,490.00** | **$53,882.95** |

[1] Work Pay = (Regular Pay Days + 2×Holidays) × Daily Pay Rate

[2] Overpay = Actual Pay - Work Pay